James S. O'Brien, Jr. (JR-0858)
Dyan Finguerra-DuCharme (DF-9228)
**PRYOR CASHMAN LLP**
7 Times Square
New York, New York 10036
Telephone:  (212) 421-4100
jobrien@pryorcashman.com
dfinguerra-ducharme@pryorcashman.com

*Attorneys for Plaintiff Chefs Diet Acquisition Corp.*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CHEFS DIET ACQUISITION CORP. d/b/a CHEFS DIET,<br><br>        Plaintiff,<br><br>          - against -<br><br>LEAN CHEFS, LLC, NICHOLAS ZAZZA and ARTHUR GUNNING,<br><br>        Defendants. | Civil Action No.<br><br>**COMPLAINT**<br><br><u>**DEMAND FOR JURY TRIAL**</u> |

Plaintiff Chefs Diet Acquisition Corp. d/b/a Chefs Diet ("CDAC"), as and for its Complaint against defendants Lean Chefs, LLC ("Lean Chefs"), Nicholas Zazza ("Zazza") and Arthur Gunning ("Gunning," together with Lean Chefs and Zazza, "Defendants"), alleges as follows:

<u>**NATURE OF THE CASE**</u>

1.      This action arises from Defendants' theft of CDAC's trade secrets to create a competing company that is deliberately infringing upon CDAC's trademark, capitalizing on its goodwill, and creating actual confusion among consumers.  Defendants' conduct is willful and malicious and warrants injunctive relief and monetary damages.

2.     Chefs Diet, formerly Zone Chefs, was formed in 2003.  Its business is delivering freshly prepared, pre-cooked meals to health-conscious customers throughout the United States and the New York Tri-state area.

3.     In 2009, CDAC purchased certain of Chefs Diet's intellectual property and confidential information in order to run the Chefs Diet business.  In particular, CDAC purchased the company's primary trade secret, a database comprising approximately 40,000 customer names and their corresponding contact information and dietary preferences.  CDAC purchased that database and is the sole owner of that trade secret.  That information had been developed over many years and is not available anywhere else.  CDAC also purchased certain federally registered trademarks existing in connection with the Chefs Diet name.

4.     The asset purchase agreement, defined below, provided for a three-year non-competition period during which Defendants could not conduct a competing business.  Three years later, Defendants Zazza and Gunning, formerly associated with Chefs Diet, opened Lean Chefs, offering identical goods and services and targeting the same consumers as CDAC.

5.     Defendants chose a company name, Lean Chefs, that was calculated deliberately to capitalize on the goodwill associated with the trademarks CDAC had purchased and to confuse customers into thinking that Lean Chefs was a division or offshoot of Chefs Diet.

6.     Making matters worse, Defendants have misappropriated the very database that CDAC had purchased and commenced contacting and soliciting CDAC's customers.  In an effort to detect whether its trade secret database had been compromised after the asset purchase, CDAC sprinkled the database with fictitious names.  Sure enough, those fictitious people started receiving direct communications from Lean Chefs, confirming that Defendants had hacked into

CDAC's database or engaged in corporate espionage. Defendants' outrageous behavior already has eroded CDAC's goodwill and brand and threatens CDAC with irreparable harm.

## THE PARTIES

7.     CDAC is a corporation organized and existing under the laws of the State of Delaware, with a place of business in New York, New York.

8.     Lean Chefs, LLC is a limited liability company organized and existing under the laws of the State of New Jersey, with a place of business at 590 Madison Avenue, New York, NY 10022.

9.     Defendant Zazza is a natural person who, upon information and belief, is a resident of New Jersey. Zazza is a principal of Lean Chefs and, prior to CDAC's acquisition of Chefs Diet's assets described below, was the Chief Technology Officer at Chefs Diet, in charge of, *inter alia*, online security.

10.    In addition, prior to CDAC's acquisition of certain of Chefs Diet's assets as described below, Zazza, through his company Zazza Technology, provided website and application services to Chefs Diet and had full access to Chefs Diet's books, records, and client database.

11.    Zazza also was a principal of Digi Analytics, a company that provided telecommunications services to Chefs Diet and which had full access to Chefs Diet's recordings of client telephone conversations and client telephone numbers through June 2011. Zazza also was CDAC's landlord post-acquisition with twenty-four hour access to Plaintiff's call center.

12.    Defendant Arthur Gunning ("Gunning") is a natural person who, upon information and belief, is a resident of New York. He is also a founder of Lean Chefs and was the CEO and a sharehold of Zone Chefs, a predecessor in interest to Chefs Diet, as well as an

officer and shareholder of Kosher Chefs Diet, Corp. and Z.C.C.A. Corp.  Gunning pleaded guilty to extortion charges in Federal Court in April 2007 for his role in a "pump and dump" securities scheme.  Gunning resigned from Zone Chefs after he was arrested on racketeering charges along with a group of reputed Colombo and Luchese crime family mobsters.

### JURISDICTION AND VENUE

13.     The Court has subject matter jurisdiction because Plaintiff's claims arise under the Lanham Act, 15 U.S.C. §§1114 and 1125, and the Computer Fraud And Abuse Act, 18 U.S.C. § 1030 *et. seq.*  Accordingly, the Court has original jurisdiction under 28 U.S.C. §§1331, 1338(a) and (b) and the Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. §1367(a).

14.     The Court has personal jurisdiction over Defendants pursuant to CPLR 301 and 302(a)(1) and (a)(2).

15.     Venue is proper pursuant to 28 U.S.C. § 1391(b).

### FACTUAL ALLEGATIONS

**A.     Chefs Diet and Its Invaluable Intellectual Property**

16.     Chefs Diet, a five-star gourmet diet delivery service, works with talented and influential diet industry professionals to deliver healthy and freshly prepared meals and snacks to health-conscious subscribers' homes throughout the United States and the New York tri-state area.

17.     On March 18, 2009, CDAC entered into a Second Amended And Restated Asset Purchase Agreement (the "APA") pursuant to which it purchased certain intellectual property

and confidential information from Chefs Diet Delivery LLC, Z.C.C.A. Corp. and Kosher Chefs Diet Corp. (collectively, the "Sellers").[1]

18.     Pursuant to the APA, CDAC purchased and now exclusively owns: (i) CHEFS DIET®, U.S. Reg. No. 3,473,541, in Classes 29, 30 and 46; (ii) CHEFS DIET®, U.S. Reg. No. 3,404,634, in Class 39;[2] and (iii) certain customer lists that the Sellers had developed through substantial effort and expense (collectively, the "Customer List").[3]

19.     The CHEFS DIET®  registrations cover prepared entrees, side dishes and meals as well as food delivery services.  Registered since 2008, they have become incontestable within the meaning of 15 U.S.C. § 1065.

20.     CDAC has expended substantial resources in marketing and promoting the high-quality goods and services sold under the CHEFS DIET® trademark.  Chefs Diet markets and promotes its services through promotional mailings to customers and potential customers, cold-calling and on the Internet at its website located at <chefsdiet.com>, through pay-per-click advertising and search engine optimization.

21.     The CHEFS DIET® program has been the subject of widespread critical acclaim, having been featured in national magazines such as *Epicurious*, *Modern Bride*, *Life & Style*, *InStyle Weddings*, *Star*, *Woman's Day*, *Built Lean* and *El Clasificado*.  The CHEFS DIET® program also has been featured in television programs about healthy living including CNBC and CNN and local television broadcasts.  Further, *Cruise Control Diet* recently named the CHEFS DIET® program as one of the "best diets for weight loss."

---

[1] CDAC and Sellers previously had  entered into an Asset Purchase Agreement in July 2008.

[2] Annexed hereto as **Exhibit A** is a true and correct copy of U.S. Reg. No. 3,473,541.  Annexed hereto as **Exhibit B** is a true and correct copy of U.S. Reg. No. 3,404,634.

[3] Subsequent to closing the APA, Plaintiff has continued to hone and develop the Customer List.

22.     Through Plaintiff's exclusive and continuous use of the CHEFS DIET® mark over the past seven years, the CHEFS DIET® mark has become widely recognized by the general consuming public as identifying Plaintiff as the sole source of the high quality goods and services bearing the mark.  As such, the CHEFS DIET® mark is of incalculable value and a substantial commercial asset.

23.     Among other things, the strength of the CHEFS DIET® mark is reflected by the exponential growth of the Chefs Diet business over the last seven years.  Today, CDAC is a market leader in the field of home delivery of pre-packaged meals designed to assist customers in losing weight.

24.     Plaintiff's continued growth and success derives in large part from its ownership of, and exclusive access to, the Customer List, which provides Plaintiff with a clear advantage over competitors.

25.     The success of the CHEFS DIET® program for customers and the unsolicited media attention the program has received, combined with the substantial sales and marketing of products and services bearing the CHEFS DIET® name, have resulted in the CHEFS DIET® mark being recognized and relied upon as identifying Plaintiff's goods and services and as distinguishing them from the goods and services of others.  The CHEFS DIET® mark has come to represent and symbolize incalculable goodwill belonging exclusively to Plaintiff.

**B.      Defendants' Infringing Conduct and Unfair Competition**

26.     Zazza and Gunning are former employees and Officers of Chefs Diet and CDAC's predecessors-in-interest and played an active role in the negotiation and consummation of the APA in which CDAC acquired the invaluable intellectual property described above.

6

27.     Upon information and belief, Zazza and Gunning helped launch Lean Chefs, a direct competitor of Chefs Diet, in 2013.

28.     In particular, on its website located at <leanchefs.com>, Lean Chefs touts itself as "the best in the gourmet diet food industry" and explains that it provides "daily diet delivery service … to customers in the Tri-State NY area."

29.     As made clear by Defendants own statements, Lean Chefs offers identical goods and services and targets the same consumers as Plaintiff.  Both companies market, promote and sell pre-packaged meal plans designed to assist customers in losing weight.

30.     In addition, Lean Chefs, like CDAC, delivers meals to consumers in a black bag and adheres to a strict 40-30-30 diet—40% carbohydrates, 30% protein and 30% favorable fats. Lean Chefs also has hired two chefs that previously worked for CDAC.

31.     Since 2013, Defendants have knowingly and willfully offered for sale, sold and promoted goods and services under the LEAN CHEFS mark throughout the New York tri-state area.[4]

32.     The LEAN CHEFS mark is substantially similar to the CHEFS DIET® mark in sight, sound and overall commercial impression.  In particular, the marks are visually and aurally similar given that the word "Chefs" is the dominant term in each mark.  Each mark also suggests a product or service that is healthy and diet conscious.  Taken together, these similarities, when used on identical goods and services, create the same overall commercial impression.

33.     The parties' logos also look similar in that they both prominently feature the color green and the latter term in each appears in a script font.

---

[4] Unbeknownst to Plaintiff, Lean Chefs filed two U.S. trademark applications for the LEAN CHEFS marks, Serial Nos. 86,306,397 and 86,020,475.  Plaintiff intends to take action against these applications at the appropriate time before the Trademark Trial and Appeal Board.

34.     Lean Chefs' website also has been designed to copy the look and feel of the Chefs Diet website, incorporating the same color schemes and presentation.

35.     Because both marks create the same commercial impression and are used on identical goods and services, consumers are likely to mistakenly believe that the goods and services bearing the LEAN CHEFS mark originate from, are licensed by, or are otherwise affiliated with Chefs Diet.

36.     In fact, over the last few weeks, consumers have called CDAC's customer-service center mistakenly believing that Chefs Diet is affiliated with Lean Chefs.[5]

37.     For example, on or about September 8, 2014, a longtime Chefs Diet customer called the Chefs Diet customer-service center stating: "I got this email about your Lean Chefs … What is the difference between that and what I have?"

38.     Likewise, around that same time, a different consumer called CDAC's customer-service center to inquire about his account.  After the customer-service sales representative could not locate the caller's account information in the CDAC database, the caller queried, "this is Lean Chefs, right?"

39.     In a third instance, a consumer called Plaintiff's customer-service center and inquired regarding a special program she had been offered by an individual named Arthur.  No one by that name works at Plaintiff's company; undoubtedly, the caller was referring to defendant Arthur Gunning and had confused Lean Chefs with CDAC.

40.     Separately, in or around September 2014, a Chefs Diet customer called the Chefs Diet customer-service center and advised: "I just got a phone call from another company that said they were going to be handling your accounts … they said you were going to be outsourcing to them."  Concerned, the customer wanted to know whether, in fact, that was true.  Of course,

---

[5] CDAC possesses recordings of these calls.

that is completely and utterly false.  When asked from whom she received that call, the caller

identified the following phone number: 212-201-0459.  As demonstrated by a screenshot pulled

from Google, that number belongs to Lean Chefs:

**About Us | LeanChefs - Gourmet Diet Delivery**
leanchefs.com/about-us/ ▾
Toll Free: 1-800-998-0244. Local: 1-212-201-0459. Home · Terms and Conditions ·
Privacy Policy · Sign Up Now! © 2014 Copyright by LeanChefs.com. All rights …

41.    Upon information and belief, Defendants have sold, distributed and promoted and

continue to sell, distribute and promote goods and services of an inferior quality under the LEAN

CHEFS mark.

42.    Indeed, consumer complaints received by Plaintiff reinforce the fact that the

goods and services sold by Defendants are vastly inferior to those provided under the CHEFS

DIET® mark.

43.    For example, one consumer complained to Plaintiff that the food she received

from Lean Chefs was "the worst food [she] ever ate."

44.    Defendants were well-aware of the CHEFS DIET® mark before engaging in their

widespread unauthorized use of the LEAN CHEFS mark in connection with their sale of

identical goods and services.  Both Gunning and Zazza previously were employed by and were

Officers of Chefs Diet (or its predecessors-in-interest), Zazza previously was Chefs Diet's Chief

Technology Officer, and his company created both the Chefs Diet and Lean Chefs websites.

45.    Defendants adopted the LEAN CHEFS mark in a willful attempt to trade upon the

goodwill associated with the CHEFS DIET® mark.

46.    Defendants intentionally have attempted to deceive the consuming public into

believing that the LEAN CHEFS mark is sponsored by or otherwise affiliated with Plaintiff.

47.     In doing so, Defendants have deliberately and unfairly profited from the goodwill associated with the CHEFS DIET® mark.

48.     Since Defendants commenced used of the LEAN CHEFS mark, Plaintiffs have suffered an erosion of CHEFS DIET® goodwill and a decrease in sales and customer base.

### C.     **Defendants Misappropriate The Customer List Through Improper Means**

49.     Upon information and belief, Defendants have stolen, or otherwise misappropriated, the Customer List purchased in connection with the APA.

50.     In particular, through its improper misappropriation and use of the Customer List, Lean Chefs has contacted individuals on the Customer List via email, standard mail and telephone, among other means, in an egregious attempt to solicit business and divert sales from Plaintiff to Lean Chefs.   Annexed hereto as **Exhibit "C"** are true and correct copies of representative mailings.

51.     Significantly, Zazza, as Chefs Diet's former Chief Technology Officer, was responsible for Chefs Diet's computer security systems prior to the acquisition.

52.     Zazza also provided technological services to Chefs Diet through a company named Zazza Technologies, LLC.   In that capacity, Zazza had access to Plaintiff's computers and computer systems, both before and after the APA closed on or about March 19, 2009.

53.     Accordingly, Zazza possessed intimate knowledge of and had access to Plaintiff's computers and computer systems.

54.     By virtue of the foregoing, Zazza had access to the Customer List.

55.     Upon information and belief, and despite Plaintiff's security systems in place, Zazza still possesses the ability to access Plaintiff's computers and computer systems and continues to do so without Plaintiff's authorization or consent.

56.     Upon information and belief, Defendants continue to access and use the Customer List, which Plaintiff constantly updates, refines and further develops.

57.     Defendants continue to access and use the Customer List through improper means and in breach of a duty owed to Plaintiff.

58.     Suspicious that Defendants had improperly gained access to Plaintiff's computers and computer systems – and thus the Customer List – Plaintiff planted fictitious names in the Customer List with addresses belonging to Plaintiff and its representatives.

59.     In due course, those fictitious individuals received mailings from Lean Chefs, which could only have been accomplished through unauthorized access to the Customer List.

60.     Since Defendants commenced used of the Customer List, Plaintiff has suffered a decrease in sales and customer base.

**D.      Defendants Ignore Plaintiff's Demand**

61.     By letter dated September 25, 2014, Plaintiff demanded that Defendants immediately cease and desist its egregious unlawful activity.  Annexed hereto as **Exhibit "D"** is a true and correct copy of the aforementioned letter.

62.     In that letter, Plaintiff advised Defendants that absent receiving a satisfactory response by October 1, 2014, it intended to pursue all necessary measures to protect its interests.

63.     Defendants, of course, failed to respond to Plaintiff, forcing Plaintiff to commence this action to seek redress for Defendants' unlawful conduct.

**COUNT I**
**Trademark Infringement 15 U.S.C. § 1114 *et. seq.***
**(Against All Defendants)**

64.     Plaintiff repeats and realleges each of the foregoing paragraphs as if fully set forth herein.

65.     Plaintiff's CHEFS DIET® mark and the goodwill associated therewith are of great and incalculable value, are highly distinctive and have become associated in the minds of the consuming public as offering products and services of the very highest quality.

66.     Defendants, without Plaintiff's authorization or consent, and having knowledge of Plaintiff's well known, prior rights in the CHEFS DIET® mark, have offered and sold goods and services to the consuming public, in or affecting interstate commerce, utilizing the LEAN CHEFS Mark in direct competition with Plaintiff.

67.     In doing so, Defendants are trading on the goodwill and reputation of the CHEFS DIET® mark.

68.     The conduct complained of herein is likely to cause confusion, to cause mistake and/or to deceive the consuming public into mistakenly believing that the goods and services sold by Defendants emanate from, are licensed by or otherwise are affiliated with Plaintiff.

69.     In fact, as set forth above, actual confusion is prevalent.

70.     The acts and conduct complained of herein constitute willful and deliberate infringement of the CHEFS DIET® mark in violation of the Lanham Act, 15 U.S.C. § 1114.

71.     As a direct and proximate consequence of the foregoing, Plaintiff has no adequate remedy at law, has been irreparably harmed and will continue to be irreparably harmed unless Defendants are enjoined from engaging in this infringing conduct and from using the LEAN CHEFS mark or any colorable imitation thereof.

72.     In addition, Plaintiff is entitled to all damages that it has sustained by virtue of Defendants' infringing conduct, in an amount to be determined at trial, including, without limitation, Defendants' profits and gains arising from the wrongful acts described herein, Plaintiff's lost profits, attorneys fees', costs and interest.

73.     Moreover, by virtue of Defendants' willful infringement, Plaintiff is entitled to statutory damages.

74.     Finally, because Defendants' actions are wanton, willful, malicious and have been undertaken in conscious disregard of Plaintiff's rights, Defendants also are liable for punitive damages.

**COUNT II**
**<u>Unfair Competition And False Designation Of Origin 15 U.S.C. § 1125</u>**
**(Against All Defendants)**

75.     Plaintiff repeats and realleges each of the foregoing paragraphs as if fully set forth herein.

76.     The goods and services sold and offered for sale by Defendants under the LEAN CHEFS mark are identical to the goods and services sold by Plaintiff under the CHEFS DIET® mark and, as such, are likely to cause confusion to the purchasing public.

77.     Defendants misrepresent and falsely describe to the general public the origin and source of the infringing goods and services and create a likelihood of confusion among ultimate purchasers as to both the source and sponsorship of same.

78.     In fact, as set forth above, actual confusion is prevalent.

79.     The acts complained of herein constitute false designation of origin and unfair competition within the meaning of the Lanham Act, 15 U.S.C. § 1125.

80.     As a direct and proximate consequence of the foregoing, Plaintiff has no adequate remedy at law, has been irreparably harmed and will continue to be irreparably harmed unless Defendants are enjoined from engaging in the infringing conduct and from using the LEAN CHEFS mark or any colorable imitation thereof.

81.     In addition, Plaintiff is entitled to all damages that it has sustained by virtue of the infringing conduct, in an amount to be determined at trial, including, without limitation, Defendants' profits and gains arising from the wrongful acts described herein, Plaintiff's lost profits, attorneys fees' costs and interest.

82.     Furthermore, because Defendants' actions are wanton, willful, malicious and have been undertaken in conscious disregard of Plaintiff's rights, Defendants also are liable for punitive damages.

## COUNT III
### Trademark Infringement Under New York Common Law
**(Against All Defendants)**

83.     Plaintiff repeats and realleges each of the foregoing paragraphs as if fully set forth herein.

84.     Plaintiff possesses strong common law rights in the CHEFS DIET® mark in connection with its sale of food and related services to the public.

85.     Plaintiff has invested substantial time, resources and effort to obtain an excellent reputation for itself, its products and the CHEFS DIET® mark.

86.     Defendants' infringing conduct is intended, among other things, to capitalize on the goodwill associated with the CHEFS DIET® and to create the false impression that LEAN CHEFS is associated with, sponsored by or otherwise affiliated with CHEFS DIET®.

87.     Defendants' infringing conduct has caused and is likely to cause confusion as to the source of Defendants' infringing goods and services, all to the detriment of Plaintiff.

88.     In fact, as set forth above, actual confusion is prevalent.

89.     Defendants' acts are willful, deliberate, intended to confuse the public and intended to injure Plaintiff.

14

90.     The foregoing constitutes unfair competition under New York common law.

91.     As a direct and proximate consequence of the foregoing, Plaintiff has no adequate remedy at law, has been irreparably harmed and will continue to be irreparably harmed unless Defendants are enjoined from engaging in the infringing conduct and from using the LEAN CHEFS Mark or any colorable imitation thereof.

92.     In addition, Plaintiff is entitled to all damages that it has sustained by virtue of the infringing conduct, in an amount to be determined at trial, including, without limitation, Defendants' profits and gains arising from the wrongful acts described herein, Plaintiff's lost profits, attorneys fees', costs and interest.

93.     Furthermore, because Defendants' actions are wanton, willful, malicious and undertaken in conscious disregard of Plaintiff's rights, Defendants also are liable for punitive damages.

**COUNT IV**
**Deceptive Acts And Practices Under N.Y. G.B.L. § 349**
**(Against All Defendants)**

94.     Plaintiff repeats and realleges each of the foregoing paragraphs as if fully set forth herein.

95.     Defendants, without Plaintiff's authorization or consent, and having knowledge of Plaintiff's well known, prior rights in the CHEFS DIET® mark, have offered and sold the infringing goods and services to the consuming public under the LEAN CHEFS mark in direct competition with Plaintiff.

96.     Defendants' use of the LEAN CHEFS mark is likely to cause and is causing confusion, mistake and deception among the general purchasing public as to the origin of the

infringing goods and services and is likely to deceive the public into believing that the infringing goods and services emanate from, are associated with or otherwise are affiliated with Chefs Diet.

97.     In fact, as set forth above, actual confusion is prevalent.

98.     The foregoing conduct involves public sales activities of a recurring nature.

99.     As a direct and proximate consequence of the foregoing, Plaintiff has no adequate remedy at law, has been irreparably harmed and will continue to be irreparably harmed unless Defendants are enjoined from engaging in the infringing conduct and from using the LEAN CHEFS mark or any colorable imitation thereof.

100.     In addition, Plaintiff is entitled to all damages that it has sustained by virtue of the aforementioned conduct, in an amount to be determined at trial, including, without limitation, Defendants' profits and gains arising from the wrongful acts described herein, Plaintiff's lost profits, attorneys fees', costs and interest.

101.     Furthermore, because Defendants' actions are wanton, willful, malicious and have been undertaken in conscious disregard of Plaintiff's rights, Defendants also are liable for punitive damages.

## COUNT V
## Breach of Fiduciary Duty
### (Against Defendants Zazza and Gunning)

102.     Plaintiff repeats and realleges each of the foregoing paragraphs as if fully set forth herein.

103.     As former agents, Officers and employees of Chefs Diet and CDAC's predecessors-in-interest, Zazza and Gunning owe a duty to Chefs Diet to refrain from using confidential information acquired in the course of their agency to compete with Plaintiff.

104.    The foregoing duty exists even in the absence of a written agreement or express covenant not to compete and survives the conclusion of Zazza and Gunning's agency.

105.    As set forth above, Zazza and Gunning have misappropriated and misused the Customer List to compete with Plaintiff.

106.    Accordingly, Zazza and Gunning have breached the duty of good faith and fair dealing owed to Plaintiff.

107.    As a direct and proximate consequence of the foregoing, Plaintiff has no adequate remedy at law, has been irreparably harmed and will continue to be irreparably harmed unless Defendants are directed to return the Customer List to Plaintiff, are enjoined from using the Customer List, and are enjoined from contacting, soliciting or otherwise providing goods or services to any of the individuals or entities identified on the Customer List.

108.    In addition, Plaintiff is entitled to all damages that it has sustained by virtue of the aforementioned conduct, in an amount to be determined at trial, including, without limitation, Defendants' profits and gains arising from the wrongful acts described herein, Plaintiff's lost profits, attorneys fees', costs and interest.

109.    Furthermore, because Defendants' actions are wanton, willful, malicious and have been undertaken in conscious disregard of Plaintiff's rights, Defendants also are liable for punitive damages.

### COUNT VI
### Misappropriation Of Trade Secrets And Confidential Information
#### (Against All Defendants)

110.    Plaintiff repeats and realleges each of the foregoing paragraphs as if fully set forth herein.

111.    The Customer List constitutes a trade secret within the meaning of New York Law because it has been developed through substantial effort and expense, contains information not otherwise readily available to the public, provides Plaintiff with an advantage over competitors and cannot be acquired or otherwise duplicated without extreme difficulty and at great expense.

112.    At all times, Plaintiff has taken reasonable and appropriate measures to maintain the secrecy of the Customer List, including, without limitation, maintaining comprehensive computer security systems.

113.    Despite the foregoing, Defendants, upon information and belief, have misappropriated and acquired the Customer List without Plaintiff's express or implied authority or consent through unlawful and improper means.

114.    Defendants' have misappropriated and used the Customer List to engage in direct competition with Plaintiff in the customized food delivery service marketplace.

115.    The use of the Customer List by Defendants erodes Plaintiff's business advantage and provides Defendants with an unfair competitive advantage that it would not otherwise enjoy.

116.    Defendants' misappropriation of the Customer List was willful, knowing and malicious.

117.    As a direct and proximate consequence of the foregoing, Plaintiff has no adequate remedy at law, has been irreparably harmed and will continue to be irreparably harmed unless Defendants are directed to return the Customer List to Plaintiff, are enjoined from using the Customer List and are enjoined from contacting, soliciting or otherwise providing goods or services to any of the individuals or entities identified on the Customer List.

118.     In addition, Plaintiff is entitled to all damages that it has sustained by virtue of the aforementioned conduct, in an amount to be determined at trial, including, without limitation, Defendants' profits and gains arising from the wrongful acts described herein, Plaintiff's lost profits, attorneys fees', costs and interest.

119.     Furthermore, because Defendants' actions are wanton, willful, malicious and have been undertaken in conscious disregard of Plaintiff's rights, Defendants also are liable for punitive damages.

**COUNT VII**
**Common Law Unfair Competition**
**(Against All Defendants)**

120.     Plaintiff repeats and realleges each of the foregoing paragraphs as if fully set forth herein.

121.     The foregoing acts constitute unfair competition under New York law.

122.     As a direct and proximate consequence of the foregoing, Plaintiff has no adequate remedy at law, has been irreparably harmed and will continue to be irreparably harmed unless Defendants are directed to return the Customer List to Plaintiff, are enjoined from using the Customer List, enjoined from contacting, soliciting or otherwise providing goods or services to any of the individuals or entities identified on the Customer List, enjoined from engaging in the infringing conduct set forth above and enjoined from using the LEAN CHEFS mark or any colorable imitation thereof

123.     In addition, Plaintiff is entitled to all damages that it has sustained by virtue of the aforementioned conduct, in an amount to be determined at trial, including, without limitation, Defendants' profits and gains arising from the wrongful acts described herein, Plaintiff's lost profits, attorneys fees', costs and interest.

124.     Furthermore, because Defendants' actions are wanton, willful, malicious and have been undertaken in conscious disregard of Plaintiff's rights, Defendants also are liable for punitive damages.

**COUNT VIII**
**Computer Fraud and Abuse Act,  18 U.S.C. § 1030(a)(2)(C), (a)(4) & (a)(5)(C)**
**(Against All Defendants)**

125.     Plaintiff repeats and realleges each of the foregoing paragraphs as if fully set forth herein.

126.     Upon information and belief, Defendants have: (i) intentionally accessed Plaintiff's computers and computer systems without Plaintiff's authorization and/or exceeded authorized access to Plaintiff's computers and computer systems and thereby improperly have obtained certain information, including, without limitation, the Customer List; (ii) knowingly, and with intent to defraud, accessed Plaintiff's computers and computer systems without Plaintiff's authorization and/or exceeded authorized access to Plaintiff's computers and computer systems and thereby obtained, among other things, the Customer List, a thing of value, valued well in excess of $5,000; and (iii) intentionally accessed Plaintiff's computers and computer systems, and as a result of such conduct, caused damage and loss within the meaning of the Act.

127.     Plaintiff's computers and computer systems constitute "protected computers" within the meaning of the Computer Fraud and Abuse Act (the "Act") because Plaintiff's computers and computer systems are used in and affect interstate commerce.

128.     Upon information and belief, Defendants accessed or otherwise compromised between 20 and 25 of Plaintiff's computers and/or servers.

129.     As a direct and proximate consequence of the foregoing, Plaintiff has undertaken various investigative and remedial measures and thereby sustained a "loss" in excess of $5,000 during a one-year period within the meaning of 18 U.S.C. § 1030(c)(4)(i)(I).

130.     Among other things, in response to Defendants' unauthorized access to Plaintiff's computer systems, Plaintiff has disabled certain IP addresses, restricted VPN access, added firewall restrictions, reconfigured its Wi-Fi access and undertaken a comprehensive investigation of its computer systems.   In total, Plaintiff estimates that it has spent in excess of 200 hours investigating and responding to Defendant's unlawful access at a cost in excess of $6,000.

131.     18 U.S.C. § 1030(g) confers a private right of action in favor of any person, including, any firm or corporation, who suffers loss or damage within the meaning of the Act.

132.     Accordingly, Plaintiff is entitled to damages in an amount to be determined at trial but in no event less than $6,000, plus attorneys' fees, costs and interest.

133.     Furthermore, because Defendants' actions are wanton, willful, malicious and have been undertaken in conscious disregard of Plaintiff's rights, Defendants also are liable for punitive damages.

**COUNT IX**
**Unjust Enrichment**
**(Against All Defendants)**

134.     Plaintiff repeats and realleges each of the foregoing paragraphs as if fully set forth herein.

135.     Owing to Defendants' infringing conduct, their misappropriation of the Customer List and their violations of 18 U.S.C. § 1030 *et. seq.*, Defendants have diverted substantial revenues from Plaintiff to Lean Chefs.

136.     As a direct and proximate consequence of the foregoing, Defendants have been unjustly enriched at Plaintiff's expense.

137.     It would be against equity and good conscience to permit Defendants to retain the substantial revenues that they have realized through the aforementioned conduct.

138.      Accordingly, Plaintiff is entitled to damages in an amount to be determined at trial, plus attorneys' fees, costs and interest.

139.     Furthermore, because Defendants' actions are wanton, willful, malicious and have been undertaken in conscious disregard of Plaintiff's rights, Defendants also are liable for punitive damages.

## COUNT X
## Conversion
## (Against All Defendants)

140.     Plaintiff repeats and realleges each of the foregoing paragraphs as if fully set forth herein.

141.     Plaintiff is the legal owner of and has an immediate superior right of possession to the Customer List.

142.     Defendants have no legal claim to or right in the Customer List.

143.     Defendants have exercised unauthorized dominion and control over the Customer List to the exclusion of Plaintiff.

144.     Plaintiff has made written demand that Defendants immediately return the Customer List to Plaintiff.

145.     Defendants have refused to return the Customer List to Plaintiff.

146.    As a direct and proximate consequence of the foregoing, Plaintiff has been injured and is entitled to damages in an amount to be determined at trial, plus attorneys' fees, costs and interest.

147.    Furthermore, because Defendants' actions are wanton, willful, malicious and have been undertaken in conscious disregard of Plaintiff's rights, Defendants also are liable for punitive damages.

### COUNT XI
### Replevin
### (Against All Defendants)

148.    Plaintiff repeats and realleges each of the foregoing paragraphs as if fully set forth herein.

149.    Plaintiff is the legal owner of and has an immediate superior right of possession to the Customer List.

150.    Defendants have no legal claim to or right in the Customer List.

151.    Defendants have exercised unauthorized dominion and control over the Customer List to the exclusion of Plaintiff.

152.    Plaintiff has made written demand that Defendants immediately return the Customer List to Plaintiff.

153.    Defendants have refused to return the Customer List to Plaintiff.

154.    As a direct and proximate consequence of the foregoing, Plaintiff has no adequate remedy at law, has been irreparably harmed and will continue to be irreparably harmed unless Defendants are directed to return the Customer List to Plaintiffs, are enjoined from using the Customer List and are enjoined from contacting, soliciting or otherwise providing goods or services to any of the individuals or entities identified on the Customer List.

## COUNT XII
## Breach of Contract
### (Against Zazza and Gunning)

155.    Plaintiff repeats and realleges each of the foregoing paragraphs as if fully set forth herein.

156.    The APA is a valid and binding agreement.

157.    Section 6.7 of the APA expressly prohibits Sellers and any of their "Affiliates," as defined in the APA, from using the "Chefs Diet" trade name or any derivative or variation thereof that is "similar" to Chefs Diet.

158.    Zazza and Gunning are Affiliates within the meaning of the APA.

159.    Zazza and Gunning have breached the APA by forming Lean Chefs and using a trade name, LEAN CHEFS, that is similar to CHEFS DIET®.

160.    As a direct and proximate consequence of the foregoing, Plaintiff has no adequate remedy at law, has been irreparably harmed and will continue to be irreparably harmed unless Zazza and Gunning are enjoined from using the LEAN CHEFS mark, or any colorable imitation thereof, a trade name "similar" to CHEFS DIET®.

161.    In the alternative, Plaintiff is entitled to all damages that it has sustained by virtue of the aforementioned conduct, in an amount to be determined at trial, including, without limitation, Zazza and Gunning's profits and gains arising from the wrongful acts described herein, Plaintiff's lost profits, attorneys fees', costs and interest.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests the following relief:

A.    That Defendants and their parents, affiliates and subsidiaries, their respective officers, shareholders, employees, directors, representatives, agents, attorneys and assigns and all

persons acting for, with, by through or under, be preliminarily and permanently enjoined and restrained from using, affixing, offering for sale, selling, advertising or promoting any goods and services with the LEAN CHEFS mark, or any colorable imitation thereof, that is confusingly similar to the CHEFS DIET® mark;

B.      That Defendants and their parents, affiliates and subsidiaries, their respective officers, shareholders, employees, directors, representatives, agents, attorneys and assigns and all persons acting for, with, by through or under, be preliminarily and permanently enjoined and restrained from the use of any false descriptions or representations or any false designations of origin or from otherwise committing any acts of unfair competition with respect to Plaintiff and the CHEFS DIET® mark by using the LEAN CHEFS mark, or any colorable imitation thereof, that is confusingly similar to the CHEFS DIET® mark;

C.      That Defendants and their parents, affiliates and subsidiaries, their respective officers, shareholders, employees, directors, representatives, agents, attorneys and assigns and all persons acting for, with, by through or under, be preliminarily and permanently enjoined and restrained from: (a) using the Customer List and (b) contacting, soliciting or otherwise providing goods or services to any of the individuals or entities identified on the Customer List;

D.      That Defendants and their parents, affiliates and subsidiaries, their respective officers, shareholders, employees, directors, representatives, agents, attorneys and assigns and all persons acting for, with, by through or under, be directed to return all copies of the Customer List to Plaintiff;

E.      That the Court order that registration be refused and/or cancelled of Defendants' applications to register LEAN CHEFS, Serial Nos. 86,306,397 and 86,020,475 and that

Defendants be permanently restrained and enjoined from filing any future applications for trademarks that are confusingly similar to Plaintiff's CHEFS DIET® mark;

F.      That the Court award an accounting to Plaintiff for the gains and profits of Defendants, and Plaintiff's corresponding lost profits, for damages sustained by Plaintiff arising from Defendants' unlawful conduct described herein;

G.      That, the Court award Plaintiff damages in an amount to be determined at trial, plus attorneys' fees, costs and interest;

H.      That, on Count VIII, the Court award Plaintiff damages in an amount to be determined at trial, but in no event less than $6,000, plus attorneys' fees, costs and interest;

I.      That the Court award treble damages to Plaintiff owing to the willful, wanton and malicious nature of Defendants' acts;

J.      That the Court award punitive damages to Plaintiff in excess of $2,000,000 owing to the willful, wanton and malicious nature of Defendants' acts;

K.      That Defendants be required to pay to Plaintiff its costs in this action, including reasonable attorneys' fees;

L.      That Plaintiff be granted such other and further relief which as to this Court seems just and proper.

Dated:  New York, New York
        October 21, 2014

                            PRYOR CASHMAN LLP


                            By:    /s/ James S. O'Brien
                                   James S. O'Brien (JO-0858)
                                   jobrien@pryorcashman.com
                                   Dyan Finguerra-DuCharme (DF-9228)
                                   dfinguerra-ducharme@pryorcashman.com
                            7 Times Square
                            New York, New York 10036-6569
                            Telephone:  (212) 421-4100
                            Facsimile:   (212) 326-0806

                            *Attorneys for Plaintiff Chefs Diet*
                            *Acquisition Corp. d/b/a Chefs Diet*