UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

CHEFS DIET ACQUISITION CORP. d/b/a
CHEFS DIET,

   Plaintiff,

    - against -

LEAN CHEFS, LLC, NICHOLAS ZAZZA and
ARTHUR GUNNING,

   Defendants.

14-CV-8467 (JMF)

**DECLARATION**

I, JOSEPH MANISCALCO, hereby declare as follows:

1. I am the Head of Customer Service and the Senior Vice President of Finance and Operations of plaintiff Chefs Diet Acquisition Corp. d/b/a Chefs Diet ("Plaintiff" or "CDAC"). As such, I have personal knowledge of, and am fully familiar with, the facts and circumstances set forth herein. I make this Declaration owing to Misha Podlog's recent departure from CDAC and to put a finer point on certain statements set forth in his declaration dated October 21, 2014.

2. CDAC is a five-star gourmet diet delivery service that works with talented and influential diet industry professionals to deliver healthy and freshly prepared meals and snacks to health-conscious subscribers' homes throughout the United States and the New York tri-state area.

3. On or about March 18, 2009, CDAC purchased certain intellectual property and confidential information from Chefs Diet Delivery LLC, Z.C.C.A. Corp. and Kosher Chefs Diet Corp. (collectively, the "Sellers") in connection with a Second Amended And Restated Asset Purchase Agreement (the "APA").[1] In particular, through the APA, CDAC purchased and now

---

[1] Defendants Nicholas Zazza and Arthur Gunning played an integral role in the negotiation and consummation of the APA.

exclusively owns: (i) CHEFS DIET®, U.S. Reg. No. 3,473,541, in Classes 29, 30 and 46; (ii) CHEFS DIET®, U.S. Reg. No. 3,404,634, in Class 39;[2] and (iii) certain customer lists which the Sellers had developed through substantial effort and expense (collectively, the "Customer List").[3]

**The CHEFS DIET Trademarks**

4.      The CHEFS DIET® trademarks, which cover prepared entrees, side dishes and meals as well as food delivery services, have been federally registered since 2008. I am advised that the marks are thus incontestable status within the meaning of 15 U.S.C. § 1065.

5.      In connection with the CHEFS DIET® mark, CDAC and its predecessors-in-interest have expended substantial resources in marketing and promoting the high-quality goods and services sold under the CHEFS DIET® name over the past seven years. In particular, CDAC markets and promotes its services to the general consuming public, without regard to consumer sophistication, through promotional mailings, emails, phone calls and on the Internet at its website <chefsdiet.com>, through pay-per-click advertising and through search engine optimization.

6.      Due to the considerable success of the CHEFS DIET® program and CDAC's substantial expenditures, CHEFS DIET® has been the subject of widespread media attention, having been featured in national magazines such as *Epicurious*, *Modern Bride*, *Life & Style*, *InStyle Weddings*, *Star*, *Woman's Day*, *Built Lean* and *El Clasificado* and in television programs about healthy living, including on *CNBC*, *CNN* and on local television broadcasts. Further,

---

[2] True and correct copies of U.S. Reg. No. 3,473,541 and U.S. Reg. No. 3,404,634 are annexed to the Complaint as Exhibits A and B, respectively.

[3] Subsequent to closing the APA, CDAC has continued to hone and develop the Customer List.

*Cruise Control Diet* recently named the CHEFS DIET® program as one of the "best diets for weight loss."

7.     Plaintiff is a market leader in the field of home delivery pre-packaged meals designed to assist customers in losing weight—currently, we deliver around 45,000 meals per month.

8.     Quite plainly, CDAC's continued growth and success derives in large part from its strong reputation, the goodwill associated with the CHEFS DIET® mark and CDAC's exclusive ownership of, and access to, the Customer List.

9.     Through CDAC's exclusive and continuous use of the CHEFS DIET® mark over the past seven years, CHEFS DIET® has become widely recognized by the general consuming public as identifying CDAC as the sole source of the high quality goods and services bearing the CHEFS DIET® name. As such, the CHEFS DIET® mark represents a substantial commercial asset and is of incalculable value.

### Defendants Form A Competing Business and Adopt A Confusingly Similar Mark

10.     The APA provided for a three-year non-competition period during which the Sellers and their affiliates could not directly or indirectly engage in a competing business. At the expiration of that period, defendants Lean Chefs, LLC ("Lean Chefs"), Nicholas Zazza[4] ("Zazza") and Arthur Gunning[5] ("Gunning," together with Lean Chefs and Zazza, "Defendants")

---

[4]   Zazza is a principal of Lean Chefs and, prior to consummation of the APA, was the Chief Technology Officer at Chefs Diet, in charge of, inter alia, online security. In addition, prior to the APA, Zazza, through his company Zazza Technologies, provided website and application services to Chefs Diet and had full access to its books, records, and client database. Zazza also was a principal of Digi Analytics, a company that provided telecommunications services to Chefs Diet and which had full access to its recordings of client telephone conversations and client telephone numbers through June 2011. Finally, Zazza was also CDAC's landlord post-acquisition with twenty-four hour access to CDAC's call center.

[5]   Gunning is a founder of Lean Chefs and was the CEO and a shareholder of a prepared food delivery business called Zone Chefs, a predecessor in interest to CDAC. He also was an officer and shareholder of CDAC's other predecessors-in-interest. He also pleaded guilty to extortion charges in Federal Court in April 2007 for his role in a

3

who previously worked for and were associated with Chefs Diet and CDAC's predecessors-in-interest, formed Lean Chefs, a competing business, which offers identical goods and services and which targets the same consumers as CDAC.

11.     In particular, on its website, located at <leanchefs.com>, Lean Chefs touts itself as "the best in the gourmet diet food industry" and explains that it provides "daily diet delivery service ... to customers in the Tri-State NY area."

12.     Defendants thus chose a company name and adopted a mark, LEAN CHEFS, in a deliberate effort to capitalize on the goodwill associated with the CHEFS DIET® mark and to confuse customers into thinking that Lean Chefs was a division or offshoot of CDAC.  Lean Chefs also lists its address as 590 Madison Avenue, the same address used by CDAC's predecessors, Chefs Diet Delivery LLC and Zone Chefs, creating further confusion between Lean Chefs and Chefs Diet.

13.     "Chefs" is the dominant term in each mark, each mark suggests a product or service that is healthy and diet conscious, and the parties' logos both prominently feature the color green and the latter term in each appears in a script font.[6]

14.     Over the last few weeks, numerous instances of actual confusion have occurred. For example, on or about September 8, 2014, a longtime Chefs Diet customer called our customer-service center stating: "I got this email about your Lean Chefs ... what is the difference between that and what I have?"  Likewise, around that time, a different consumer called our customer-service center to inquire about his account.   After our customer-service sales representative failed to locate the caller's account information, the caller queried, "this is Lean

---

"pump and dump" securities scheme.  Gunning resigned from Zone Chefs shortly after he was arrested in racketeering charges along with a gaggle of reputed Luchese and Colombo crime family mobsters.

[6] The parties' logos may be viewed at <chefsdiet.com> and <leanchefs.com>, respectively.

4

Chefs, right?" In another instance, a consumer called our customer-service center and inquired regarding a special program she had been offered by an individual named Arthur. We do not employ anyone by that name; without doubt, the caller was referring to defendant Arthur Gunning and had confused Lean Chefs with our services.

15.     Separately, a fourth Chefs Diet customer called our customer-service center and advised: "I just got a phone call from another company that said they were going to be handling your accounts … they said you were going to be outsourcing to them." Concerned, the customer wanted to know whether, in fact, that was true. Of course, that is a complete falsehood. When asked from whom she received that call, the caller identified the following phone number: 212-201-0459, which, according to Google, belongs to Lean Chefs. All customer calls are recorded.

16.     Making matters worse, Defendants market and sell inferior goods and services under the LEAN CHEFS mark. In particular, Defendants market and sell food products at substantially cheaper prices than we do, owing to, among other things, the inferior quality of their ingredients.

17.     Consumer complaints received by CDAC confirm that the goods and services sold by Defendants are vastly inferior to those provided under the CHEFS DIET® mark. For example, one consumer recently complained to us that the food she received from Lean Chefs was "the worst food [she] ever ate."

### Defendants Misappropriate The Customer List Through Improper Means

18.     The Customer List embodies a database that comprises approximately 44,000 customer names and includes corresponding contact information and dietary preferences. It has been developed over many years and contains a unique amalgamation of consumer information

5

not readily ascertainable or easily duplicated. Indeed, absent misappropriation, it would be virtually impossible to duplicate the Customer List.

19. Owing to its immense value, we maintain comprehensive computer security systems and employ other appropriate measures to safeguard the secrecy of the Customer List. For example, we restrict access to the CDAC database, check IP addresses on a regular basis, installed firewalls to safeguard against unauthorized access, removed certain functions from the database to prevent one accessing the same from downloading or otherwise removing the Customer List, maintain 24/7 video surveillance for the CDAC offices as well as ADT security systems, employ website hosting services that feature bio-metric access with firewalls and corresponding state of the art security; employ IT support that uses state of the art firewalls; and password protect access to the Customer List whenever we send out promotional materials for mailing or printing.

20. In an egregious effort to solicit business and divert sales from CDAC to Lean Chefs, Defendants have repeatedly contacted individuals on the Customer List via email, mail and telephone. Defendants have made these contacts through their misappropriation of the Customer List.

21. The volume and style of contacts makes it clear that Defendants did not target those customers merely from memory, but made those contacts through their misappropriation of the Customer List.

22. Upon information and belief, Defendants surreptitiously – and duplicitously – kept a copy of the Customer List when it purported to sell it to CDAC.

23. In 2012, CDAC added an employee's name to the Customer List, with his private email address, and in 2013, CDAC added a fictitious name to the Customer List for quality

6

control purposes. In due course, the employee and the fictitious name received mailings from Lean Chefs.[7]

24.     Of course, that only could have been accomplished through continued unauthorized access to the Customer List post acquisition. Thus, Defendants either hacked into CDAC's computer systems post acquisition or employed other nefarious methods to obtain access to the updated version of the Customer List.

### CDAC Is Suffering Irreparable Harm

25.     CDAC's business model depends upon its ability to maintain a well-respected and strong reputation for CHEFS DIET®. Likewise, CDAC's continued success also depends upon its ability to exploit the invaluable information contained in the Customer List to the exclusion of competitors.

26.     With each passing day, consumers mistakenly believe that CHEFS DIET® is affiliated with the inferior goods and services marketed and sold under the LEAN CHEFS mark, permanently impairing the reputation of CHEFS DIET® and the goodwill associated therewith.

27.     Further, Defendants' continued unlawful exploitation of the Customer List risks irreversible losses to our customer base and market advantage. Indeed, subsequent to Defendants' misappropriation and exploitation of the Customer List, we have suffered a significant decrease in sales and customer base. Despite our good faith efforts, CDAC has been unable to persuade Defendants to cease their egregious unlawful activities. As such, CDAC has been forced to commence this action to redress Defendants' ongoing egregious unlawful activity. A true and correct copy of CDAC's Complaint, filed concurrently herewith, is annexed hereto as Exhibit A.

---

[7] In addition, prior to consummating the APA, CDAC added a present officer's mother to the Customer List and accidentally misspelled her name. Years later, that individual inexplicably received promotional materials from Lean Chefs consistent with that misspelling.

7

28.    Unless Defendants are enjoined, Plaintiff will continue to suffer irreparable harm

to its reputation and goodwill and irreversible losses to its customer base and market advantage.

November 24, 2014
New York, NY

_____
JOSEPH MANISCALCO