IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

CHEFS DIET ACQUISITION CORP. d/b/a
CHEFS DIET,

        Plaintiff,   CASE NO: 14-CV-8467 (JMF)

v.

LEAN CHEFS, LLC, NICHOLAS ZAZZA
and ARTHUR GUNNING,

        Defendants.
_____/

**DECLARATION OF NICHOLAS ZAZZA IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

I, Nicholas Zazza, declare as follows:

1. I am a founding partner of Lean Chefs, LLC ("Lean Chefs").

2. Lean Chefs launched in November of 2013.

3. Prior to the sale of Chefs Diet's sale to Chefs Diet Acquisition Corp. d/b/a Chefs Diet ("CDAC") Kevin Glodek, an agent and shareholder of CDAC convinced me to loan Chefs Diet $218,000. Glodek promised that I would be repaid, but I never was.

4. Following the sale of Chefs Diet to CDAC, I reluctantly assisted CDAC with email marketing. I was paid nothing for this assistance. CDAC and its representatives led me to believe that if CDAC became profitable, I would recoup the money I previously loaned to Chefs Diet that was never repaid.

5. I never signed any written agreements or entered into any verbal agreements with CDAC regarding the confidentiality of any of its files, and I was never asked to. CDAC never informed me that any of its files were confidential.

6. Following the execution of the Second Amended and Restated Asset Purchase Agreement ("APA"), Zazza Technologies, LLC and later DigiClick Corporation d/b/a DigiPBX managed CDAC's phone systems. DigiPBX ceased managing CDAC's phone systems in July 2011.

7. On December 9, 2013, I received a cease and desist letter from Lance Friedman, the then CEO of Chefs Diet.

8. The letter stated that Arthur Gunning, Lean Chefs, and I had been in contact with CDAC customers "through unauthorized misuse of its proprietary customer list…"

9. The demands made in the letter were not specific, so I contacted Mr. Friedman for more information on December 9, 2013.

10. Mr. Friedman provided his phone number, and I attempted to get in touch with him without success. On December 16th and December 21st, I also emailed Mr. Friedman to discuss the letter, but he did not respond to my requests.

11. Because Mr. Friedman did not give me information regarding the claim that Lean Chefs misappropriated CDAC's customer list, I could not investigate Lean Chefs' database.

12. It was not until Plaintiff filed its complaint in this case I became aware that CDAC "sprinkled" its own database with contacts that allegedly received mailings from Lean Chefs.

13. The complaint did not state the names of the sprinkled contacts, and I did not learn the names until Plaintiff responded to interrogatories on November 21, 2014.

14. Once I had those names, I was able to search Lean Chefs' database and determine their presence.

15. I located the names "Christian Ledan" and "Peter Daniel" on a database purchased on or about August 2013 at the Leadcon tradeshow in New York and "Joanne Glodek" was found on the email file Chefs Diet sent to me in February 2010. Lean Chefs technical expert Bruce F. Webster also confirmed that the source of contamination was this email file.

16. As soon as we discovered the source of the contamination of our database, we isolated the files and stopped using them.

17. I have never accessed any computers belonging to Chefs Diet or CDAC following the execution of the APA. I have never hacked into or remotely accessed CDAC's computer system.

Pursuant to 28 U.S.C. §1746, I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated:

_____
Nicholas Zazza