UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

CHEFS DIET ACQUISITION CORP. d/b/a
CHEFS DIET,

               Plaintiff,

                   - against -

LEAN CHEFS, LLC, NICHOLAS ZAZZA and
ARTHUR GUNNING,

               Defendants.

Civil Action No.

**<u>DECLARATION</u>**

---

I, MISHA PODLOG, hereby declare as follows:

1.     I am the president of plaintiff Chefs Diet Acquisition Corp. d/b/a Chefs Diet ("Plaintiff" or "CDAC"). In addition, I previously was associated with the Sellers (as that term is defined below) who sold certain assets to Plaintiff in connection with an asset purchase agreement described more fully below. As such, I have personal knowledge of, and am fully familiar with, the facts and circumstances set forth herein.

2.     CDAC is a five-star gourmet diet delivery service that works with talented and influential diet industry professionals to deliver healthy and freshly prepared meals and snacks to health-conscious subscribers' homes throughout the United States and the New York tri-state area.

3.     On or about March 18, 2009, CDAC purchased certain intellectual property and confidential information from Chefs Diet Delivery LLC, Z.C.C.A. Corp. and Kosher Chefs Diet Corp. (collectively, the "Sellers") in connection with a Second Amended And Restated Asset Purchase Agreement (the "APA").[1] In particular, through the APA, CDAC purchased and now

---

[1] Defendants Nicholas Zazza and Arthur Gunning played an integral role in the negotiation and consummation of the APA.

exclusively owns: (i) CHEFS DIET®, U.S. Reg. No. 3,473,541, in Classes 29, 30 and 46; (ii) CHEFS DIET®, U.S. Reg. No. 3,404,634, in Class 39;[2] and (iii) certain customer lists which the Sellers had developed through substantial effort and expense (collectively, the "Customer List").[3]

### The CHEFS DIET Trademarks

4.      The CHEFS DIET® trademarks, which cover prepared entrees, side dishes and meals as well as food delivery services, have been federally registered since 2008.  I am advised that the marks are thus incontestable status within the meaning of 15 U.S.C. § 1065.

5.      In connection with the CHEFS DIET® mark, CDAC and its predecessors-in-interest have expended substantial resources in marketing and promoting the high-quality goods and services sold under the CHEFS DIET® name over the past seven years.  In particular, CDAC markets and promotes its services to the general consuming public, without regard to consumer sophistication, through promotional mailings, emails, phone calls and on the Internet at its website <chefsdiet.com>, through pay-per-click advertising and through search engine optimization.

6.      Due to the considerable success of the CHEFS DIET® program and CDAC's substantial expenditures, CHEFS DIET® has been the subject of widespread media attention, having been featured in national magazines such as *Epicurious*, *Modern Bride*, *Life & Style*, *InStyle Weddings*, *Star*, *Woman's Day*, *Built Lean* and *El Clasificado* and in television programs about healthy living, including on *CNBC*, *CNN* and on local television broadcasts.  Further,

---

[2] True and correct copies of U.S. Reg. No. 3,473,541 and U.S. Reg. No. 3,404,634 are annexed to the Complaint as Exhibits A and B, respectively.

[3] Subsequent to closing the APA, CDAC has continued to hone and develop the Customer List.

*Cruise Control Diet* recently named the CHEFS DIET® program as one of the "best diets for weight loss."

7.      Plaintiff is a market leader in the field of home delivery pre-packaged meals designed to assist customers in losing weight—currently, we deliver around 45,000 meals per month.

8.      Quite plainly, CDAC's continued growth and success derives in large part from its strong reputation, the goodwill associated with the CHEFS DIET® mark and CDAC's exclusive ownership of, and access to, the Customer List.

9.      Through CDAC's exclusive and continuous use of the CHEFS DIET® mark over the past seven years, CHEFS DIET® has become widely recognized by the general consuming public as identifying CDAC as the sole source of the high quality goods and services bearing the CHEFS DIET® name.  As such, the CHEFS DIET® mark represents a substantial commercial asset and is of incalculable value.

**Defendants Form A Competing Business and Adopt A Confusingly Similar Mark**

10.     The APA provided for a three-year non-competition period during which the Sellers and their affiliates could not directly or indirectly engage in a competing business.  At the expiration of that period, defendants Lean Chefs, LLC ("Lean Chefs"), Nicholas Zazza [4] ("Zazza") and Arthur Gunning[5] ("Gunning," together with Lean Chefs and Zazza, "Defendants")

---

[4]  Zazza is a principal of Lean Chefs and, prior to consummation of the APA, was the Chief Technology Officer at Chefs Diet, in charge of, inter alia, online security.  In addition, prior to the APA, Zazza, through his company Zazza Technology, provided website and application services to Chefs Diet and had full access to its books, records, and client database.  Zazza also was a principal of Digi Analytics, a company that provided telecommunications services to Chefs Diet and which had full access to its recordings of client telephone conversations and client telephone numbers through June 2011.  Finally, Zazza was also CDAC's landlord post-acquisition with twenty-four hour access to CDAC's call center.

[5]  Gunning is a founder of Lean Chefs and was the CEO and shareholder of a prepared food delivery business called Zone Chefs, a predecessor in interest to CDAC.  He also was an officer and shareholder of CDCA's other predecessors-in-interest.  He also pleaded guilty to extortion charges in Federal Court in April 2007 for his role in a

who previously worked for and were associated with Chefs Diet and CDAC's predecessors-in-interest, formed Lean Chefs, a competing business, which offers identical goods and services and which targets the same consumers as CDAC.

11.    In particular, on its website, located at <leanchefs.com>, Lean Chefs touts itself as "the best in the gourmet diet food industry" and explains that it provides "daily diet delivery service … to customers in the Tri-State NY area."

12.    Defendants thus chose a company name and adopted a mark, LEAN CHEFS, in a deliberate effort to capitalize on the goodwill associated with the CHEFS DIET® mark and to confuse customers into thinking that Lean Chefs was a division or offshoot of CDAC.  Lean Chefs also lists its address as 590 Madison Avenue, the same address used by CDAC's predecessors, Chefs Diet Delivery LLC and Zone Chefs, creating further confusion between Lean Chefs and Chefs Diet.

13.    "Chefs" is the dominant term in each mark, each mark suggests a product or service that is healthy and diet conscious, and the parties' logos both prominently feature the color green and the latter term in each appears in a script font.[6]

14.    Over the last few weeks, numerous instances of actual confusion have occurred. For example, on or about September 8, 2014, a longtime Chefs Diet customer called our customer-service center stating: "I got this email about your Lean Chefs … what is the difference between that and what I have?"  Likewise, around that time, a different consumer called our customer-service center to inquire about his account.  After our customer-service sales representative failed to locate the caller's account information, the caller queried, "this is Lean

---

"pump and dump" securities scheme.  Gunning resigned from Zone Chefs shortly after he was arrested in racketeering charges along with a gaggle of reputed Luchese and Colombo crime family mobsters.

[6] The parties' logos may be viewed at <chefsdiet.com> and <leanchefs.com>, respectively.

Chefs, right?"  In another instance, a consumer called our customer-service center and inquired regarding a special program she had been offered by an individual named Arthur.  We do not employ anyone by that name; without doubt, the caller was referring to defendant Arthur Gunning and had confused Lean Chefs with our services.

15.     Separately, a fourth Chefs Diet customer called our customer-service center and advised: "I just got a phone call from another company that said they were going to be handling your accounts … they said you were going to be outsourcing to them."  Concerned, the customer wanted to know whether, in fact, that was true.  Of course, that is a complete falsehood.  When asked from whom she received that call, the caller identified the following phone number: 212-201-0459, which, according to Google, belongs to Lean Chefs.  All customer calls are recorded.

16.     Making matters worse, Defendants market and sell inferior goods and services under the LEAN CHEFS mark.  In particular, Defendants market and sell food products at substantially cheaper prices than we do, owing to, among other things, the inferior quality of their ingredients.

17.     Consumer complaints received by CDAC confirm that the goods and services sold by Defendants are vastly inferior to those provided under the CHEFS DIET® mark.  For example, one consumer recently complained to us that the food she received from Lean Chefs was "the worst food [she] ever ate."

**Defendants Misappropriate The Customer List Through Improper Means**

18.     The Customer List embodies a database that comprises approximately 44,000 customer names and includes corresponding contact information and dietary preferences.  It has been developed over many years and contains a unique amalgamation of consumer information

not readily ascertainable or easily duplicated. Indeed, absent misappropriation, it would be virtually impossible to duplicate the Customer List.

19.     Owing to its immense value, we maintain comprehensive computer security systems and employ other appropriate measures to safeguard the secrecy of the Customer List. For example, we restrict access to the CDAC database, check IP addresses on a regular basis, installed firewalls to safeguard against unauthorized access, removed certain functions from the database to prevent one accessing the same from downloading or otherwise removing the Customer List, maintain 24/7 video surveillance for the CDAC offices as well as ADT security systems, employ website hosting services that feature bio-metric access with firewalls and corresponding state of the art security; employ IT support that uses state of the art firewalls; and password protect access to the Customer List whenever we send out promotional materials for mailing or printing.

20.     In an egregious effort to solicit business and divert sales from CDAC to Lean Chefs, Defendants have repeatedly contacted individuals on the Customer List via email, mail and telephone. Defendants have made these contacts through their misappropriation of the Customer List.

21.     The volume and style of contacts makes it clear that Defendants did not target those customers merely from memory, but made those contacts through their misappropriation of the Customer List.

22.     Upon information and belief, Defendants surreptitiously – and duplicitously – kept a copy of the Customer List when it purported to sell it to CDAC.

23.     To corroborate its suspicions of Defendants' wrongful conduct, CDAC sprinkled the Customer List with fictitious names with corresponding addresses belonging to CDAC and its representatives.  In due course, those fictitious individuals received mailings from Lean Chefs.

24.     Of course, that only could have been accomplished through continued unauthorized access to the Customer List post acquisition.  Thus, Defendants either hacked into CDAC's computer systems post acquisition or employed other nefarious methods to obtain access to the updated version of the Customer List.

**CDAC Is Suffering Irreparable Harm**

25.     CDAC's business model depends upon its ability to maintain a well-respected and strong reputation for CHEFS DIET®.  Likewise, CDAC's continued success also depends upon its ability to exploit the invaluable information contained in the Customer List to the exclusion of competitors.

26.     With each passing day, consumers mistakenly believe that CHEFS DIET® is affiliated with the inferior goods and services marketed and sold under the LEAN CHEFS mark, permanently impairing the reputation of CHEFS DIET® and the goodwill associated therewith.

27.     Further, Defendants' continued unlawful exploitation of the Customer List risks irreversible losses to our customer base and market advantage.  Indeed, subsequent to Defendants' misappropriation and exploitation of the Customer List, we have suffered a significant decrease in sales and customer base.  Despite our good faith efforts, CDAC has been unable to persuade Defendants to cease their egregious unlawful activities.  As such, CDAC has been forced to commence this action to redress Defendants' ongoing egregious unlawful activity. A true and correct copy of CDAC's Complaint, filed concurrently herewith, is annexed hereto as Exhibit A.

28.     Unless Defendants are enjoined, Plaintiff will continue to suffer irreparable harm

to its reputation and goodwill and irreversible losses to its customer base and market advantage.

October 21, 2014
New York, NY

MISHA PODLOG

# EXHIBIT A

James S. O'Brien, Jr. (JR-0858)
Dyan Finguerra-DuCharme (DF-9228)
**PRYOR CASHMAN LLP**
7 Times Square
New York, New York 10036
Telephone:  (212) 421-4100
jobrien@pryorcashman.com
dfinguerra-ducharme@pryorcashman.com

*Attorneys for Plaintiff Chefs Diet Acquisition Corp.*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CHEFS DIET ACQUISITION CORP. d/b/a CHEFS DIET,<br><br>                    Plaintiff,<br><br>                         - against -<br><br>LEAN CHEFS, LLC, NICHOLAS ZAZZA and ARTHUR GUNNING,<br><br>                    Defendants. | Civil Action No.<br><br>**COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

        Plaintiff Chefs Diet Acquisition Corp. d/b/a Chefs Diet ("CDAC"), as and for its Complaint against defendants Lean Chefs, LLC ("Lean Chefs"), Nicholas Zazza ("Zazza") and Arthur Gunning ("Gunning," together with Lean Chefs and Zazza, "Defendants"), alleges as follows:

## NATURE OF THE CASE

        1.        This action arises from Defendants' theft of CDAC's trade secrets to create a competing company that is deliberately infringing upon CDAC's trademark, capitalizing on its goodwill, and creating actual confusion among consumers.  Defendants' conduct is willful and malicious and warrants injunctive relief and monetary damages.

2.      Chefs Diet, formerly Zone Chefs, was formed in 2003.  Its business is delivering freshly prepared, pre-cooked meals to health-conscious customers throughout the United States and the New York Tri-state area.

3.      In 2009, CDAC purchased certain of Chefs Diet's intellectual property and confidential information in order to run the Chefs Diet business.  In particular, CDAC purchased the company's primary trade secret, a database comprising approximately 40,000 customer names and their corresponding contact information and dietary preferences.  CDAC purchased that database and is the sole owner of that trade secret.  That information had been developed over many years and is not available anywhere else.  CDAC also purchased certain federally registered trademarks existing in connection with the Chefs Diet name.

4.      The asset purchase agreement, defined below, provided for a three-year non-competition period during which Defendants could not conduct a competing business.  Three years later, Defendants Zazza and Gunning, formerly associated with Chefs Diet, opened Lean Chefs, offering identical goods and services and targeting the same consumers as CDAC.

5.      Defendants chose a company name, Lean Chefs, that was calculated deliberately to capitalize on the goodwill associated with the trademarks CDAC had purchased and to confuse customers into thinking that Lean Chefs was a division or offshoot of Chefs Diet.

6.      Making matters worse, Defendants have misappropriated the very database that CDAC had purchased and commenced contacting and soliciting CDAC's customers.  In an effort to detect whether its trade secret database had been compromised after the asset purchase, CDAC sprinkled the database with fictitious names.  Sure enough, those fictitious people started receiving direct communications from Lean Chefs, confirming that Defendants had hacked into

CDAC's database or engaged in corporate espionage. Defendants' outrageous behavior already has eroded CDAC's goodwill and brand and threatens CDAC with irreparable harm.

## THE PARTIES

7.     CDAC is a corporation organized and existing under the laws of the State of Delaware, with a place of business in New York, New York.

8.     Lean Chefs, LLC is a limited liability company organized and existing under the laws of the State of New Jersey, with a place of business at 590 Madison Avenue, New York, NY 10022.

9.     Defendant Zazza is a natural person who, upon information and belief, is a resident of New Jersey. Zazza is a principal of Lean Chefs and, prior to CDAC's acquisition of Chefs Diet's assets described below, was the Chief Technology Officer at Chefs Diet, in charge of, *inter alia*, online security.

10.     In addition, prior to CDAC's acquisition of certain of Chefs Diet's assets as described below, Zazza, through his company Zazza Technology, provided website and application services to Chefs Diet and had full access to Chefs Diet's books, records, and client database.

11.     Zazza also was a principal of Digi Analytics, a company that provided telecommunications services to Chefs Diet and which had full access to Chefs Diet's recordings of client telephone conversations and client telephone numbers through June 2011. Zazza also was CDAC's landlord post-acquisition with twenty-four hour access to Plaintiff's call center.

12.     Defendant Arthur Gunning ("Gunning") is a natural person who, upon information and belief, is a resident of New York. He is also a founder of Lean Chefs and was the CEO and a sharehold of Zone Chefs, a predecessor in interest to Chefs Diet, as well as an

officer and shareholder of Kosher Chefs Diet, Corp. and Z.C.C.A. Corp.  Gunning pleaded guilty to extortion charges in Federal Court in April 2007 for his role in a "pump and dump" securities scheme.  Gunning resigned from Zone Chefs after he was arrested on racketeering charges along with a group of reputed Colombo and Luchese crime family mobsters.

## JURISDICTION AND VENUE

13.     The Court has subject matter jurisdiction because Plaintiff's claims arise under the Lanham Act, 15 U.S.C. §§1114 and 1125, and the Computer Fraud And Abuse Act, 18 U.S.C. § 1030 *et. seq.*  Accordingly, the Court has original jurisdiction under 28 U.S.C. §§1331, 1338(a) and (b) and the Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. §1367(a).

14.     The Court has personal jurisdiction over Defendants pursuant to CPLR 301 and 302(a)(1) and (a)(2).

15.     Venue is proper pursuant to 28 U.S.C. § 1391(b).

## FACTUAL ALLEGATIONS

### A.     Chefs Diet and Its Invaluable Intellectual Property

16.     Chefs Diet, a five-star gourmet diet delivery service, works with talented and influential diet industry professionals to deliver healthy and freshly prepared meals and snacks to health-conscious subscribers' homes throughout the United States and the New York tri-state area.

17.     On March 18, 2009, CDAC entered into a Second Amended And Restated Asset Purchase Agreement (the "APA") pursuant to which it purchased certain intellectual property

and confidential information from Chefs Diet Delivery LLC, Z.C.C.A. Corp. and Kosher Chefs Diet Corp. (collectively, the "Sellers").[1]

18.    Pursuant to the APA, CDAC purchased and now exclusively owns: (i) CHEFS DIET®, U.S. Reg. No. 3,473,541, in Classes 29, 30 and 46; (ii) CHEFS DIET®, U.S. Reg. No. 3,404,634, in Class 39;[2] and (iii) certain customer lists that the Sellers had developed through substantial effort and expense (collectively, the "Customer List").[3]

19.    The CHEFS DIET®  registrations cover prepared entrees, side dishes and meals as well as food delivery services.  Registered since 2008, they have become incontestable within the meaning of 15 U.S.C. § 1065.

20.    CDAC has expended substantial resources in marketing and promoting the high-quality goods and services sold under the CHEFS DIET® trademark.  Chefs Diet markets and promotes its services through promotional mailings to customers and potential customers, cold-calling and on the Internet at its website located at <chefsdiet.com>, through pay-per-click advertising and search engine optimization.

21.    The CHEFS DIET® program has been the subject of widespread critical acclaim, having been featured in national magazines such as *Epicurious*, *Modern Bride*, *Life & Style*, *InStyle Weddings*, *Star*, *Woman's Day*, *Built Lean* and *El Clasificado*.  The CHEFS DIET® program also has been featured in television programs about healthy living including CNBC and CNN and local television broadcasts.  Further, *Cruise Control Diet* recently named the CHEFS DIET® program as one of the "best diets for weight loss."

---

[1] CDAC and Sellers previously had  entered into an Asset Purchase Agreement in July 2008.

[2] Annexed hereto as **Exhibit A** is a true and correct copy of U.S. Reg. No. 3,473,541.  Annexed hereto as **Exhibit B** is a true and correct copy of U.S. Reg. No. 3,404,634.

[3] Subsequent to closing the APA, Plaintiff has continued to hone and develop the Customer List.

22.     Through Plaintiff's exclusive and continuous use of the CHEFS DIET® mark over the past seven years, the CHEFS DIET® mark has become widely recognized by the general consuming public as identifying Plaintiff as the sole source of the high quality goods and services bearing the mark.  As such, the CHEFS DIET® mark is of incalculable value and a substantial commercial asset.

23.     Among other things, the strength of the CHEFS DIET® mark is reflected by the exponential growth of the Chefs Diet business over the last seven years.  Today, CDAC is a market leader in the field of home delivery of pre-packaged meals designed to assist customers in losing weight.

24.     Plaintiff's continued growth and success derives in large part from its ownership of, and exclusive access to, the Customer List, which provides Plaintiff with a clear advantage over competitors.

25.     The success of the CHEFS DIET® program for customers and the unsolicited media attention the program has received, combined with the substantial sales and marketing of products and services bearing the CHEFS DIET® name, have resulted in the CHEFS DIET® mark being recognized and relied upon as identifying Plaintiff's goods and services and as distinguishing them from the goods and services of others.  The CHEFS DIET® mark has come to represent and symbolize incalculable goodwill belonging exclusively to Plaintiff.

**B.     Defendants' Infringing Conduct and Unfair Competition**

26.     Zazza and Gunning are former employees and Officers of Chefs Diet and CDAC's predecessors-in-interest and played an active role in the negotiation and consummation of the APA in which CDAC acquired the invaluable intellectual property described above.

6

27.     Upon information and belief, Zazza and Gunning helped launch Lean Chefs, a direct competitor of Chefs Diet, in 2013.

28.     In particular, on its website located at <leanchefs.com>, Lean Chefs touts itself as "the best in the gourmet diet food industry" and explains that it provides "daily diet delivery service … to customers in the Tri-State NY area."

29.     As made clear by Defendants own statements, Lean Chefs offers identical goods and services and targets the same consumers as Plaintiff.  Both companies market, promote and sell pre-packaged meal plans designed to assist customers in losing weight.

30.     In addition, Lean Chefs, like CDAC, delivers meals to consumers in a black bag and adheres to a strict 40-30-30 diet—40% carbohydrates, 30% protein and 30% favorable fats. Lean Chefs also has hired two chefs that previously worked for CDAC.

31.     Since 2013, Defendants have knowingly and willfully offered for sale, sold and promoted goods and services under the LEAN CHEFS mark throughout the New York tri-state area.[4]

32.     The LEAN CHEFS mark is substantially similar to the CHEFS DIET® mark in sight, sound and overall commercial impression.  In particular, the marks are visually and aurally similar given that the word "Chefs" is the dominant term in each mark.  Each mark also suggests a product or service that is healthy and diet conscious.  Taken together, these similarities, when used on identical goods and services, create the same overall commercial impression.

33.     The parties' logos also look similar in that they both prominently feature the color green and the latter term in each appears in a script font.

_____

[4] Unbeknownst to Plaintiff, Lean Chefs filed two U.S. trademark applications for the LEAN CHEFS marks, Serial Nos. 86,306,397 and 86,020,475.  Plaintiff intends to take action against these applications at the appropriate time before the Trademark Trial and Appeal Board.

34.     Lean Chefs' website also has been designed to copy the look and feel of the Chefs Diet website, incorporating the same color schemes and presentation.

35.     Because both marks create the same commercial impression and are used on identical goods and services, consumers are likely to mistakenly believe that the goods and services bearing the LEAN CHEFS mark originate from, are licensed by, or are otherwise affiliated with Chefs Diet.

36.     In fact, over the last few weeks, consumers have called CDAC's customer-service center mistakenly believing that Chefs Diet is affiliated with Lean Chefs.[5]

37.     For example, on or about September 8, 2014, a longtime Chefs Diet customer called the Chefs Diet customer-service center stating: "I got this email about your Lean Chefs … What is the difference between that and what I have?"

38.     Likewise, around that same time, a different consumer called CDAC's customer-service center to inquire about his account.  After the customer-service sales representative could not locate the caller's account information in the CDAC database, the caller queried, "this is Lean Chefs, right?"

39.     In a third instance, a consumer called Plaintiff's customer-service center and inquired regarding a special program she had been offered by an individual named Arthur.  No one by that name works at Plaintiff's company; undoubtedly, the caller was referring to defendant Arthur Gunning and had confused Lean Chefs with CDAC.

40.     Separately, in or around September 2014, a Chefs Diet customer called the Chefs Diet customer-service center and advised: "I just got a phone call from another company that said they were going to be handling your accounts … they said you were going to be outsourcing to them."  Concerned, the customer wanted to know whether, in fact, that was true.  Of course,

---

[5] CDAC possesses recordings of these calls.

that is completely and utterly false.  When asked from whom she received that call, the caller

identified the following phone number: 212-201-0459.  As demonstrated by a screenshot pulled

from Google, that number belongs to Lean Chefs:

About Us | LeanChefs - Gourmet Diet Delivery
leanchefs.com/about-us/ ▾
Toll Free: 1-800-998-0244. Local: 1-212-201-0459. Home · Terms and Conditions ·
Privacy Policy · Sign Up Now! © 2014 Copyright by LeanChefs.com. All rights ...

41.     Upon information and belief, Defendants have sold, distributed and promoted and

continue to sell, distribute and promote goods and services of an inferior quality under the LEAN

CHEFS mark.

42.     Indeed, consumer complaints received by Plaintiff reinforce the fact that the

goods and services sold by Defendants are vastly inferior to those provided under the CHEFS

DIET® mark.

43.     For example, one consumer complained to Plaintiff that the food she received

from Lean Chefs was "the worst food [she] ever ate."

44.     Defendants were well-aware of the CHEFS DIET® mark before engaging in their

widespread unauthorized use of the LEAN CHEFS mark in connection with their sale of

identical goods and services.  Both Gunning and Zazza previously were employed by and were

Officers of Chefs Diet (or its predecessors-in-interest), Zazza previously was Chefs Diet's Chief

Technology Officer, and his company created both the Chefs Diet and Lean Chefs websites.

45.     Defendants adopted the LEAN CHEFS mark in a willful attempt to trade upon the

goodwill associated with the CHEFS DIET® mark.

46.     Defendants intentionally have attempted to deceive the consuming public into

believing that the LEAN CHEFS mark is sponsored by or otherwise affiliated with Plaintiff.

47.     In doing so, Defendants have deliberately and unfairly profited from the goodwill associated with the CHEFS DIET® mark.

48.     Since Defendants commenced used of the LEAN CHEFS mark, Plaintiffs have suffered an erosion of CHEFS DIET® goodwill and a decrease in sales and customer base.

### C.     Defendants Misappropriate The Customer List Through Improper Means

49.     Upon information and belief, Defendants have stolen, or otherwise misappropriated, the Customer List purchased in connection with the APA.

50.     In particular, through its improper misappropriation and use of the Customer List, Lean Chefs has contacted individuals on the Customer List via email, standard mail and telephone, among other means, in an egregious attempt to solicit business and divert sales from Plaintiff to Lean Chefs.   Annexed hereto as **Exhibit "C"** are true and correct copies of representative mailings.

51.     Significantly, Zazza, as Chefs Diet's former Chief Technology Officer, was responsible for Chefs Diet's computer security systems prior to the acquisition.

52.     Zazza also provided technological services to Chefs Diet through a company named Zazza Technologies, LLC.   In that capacity, Zazza had access to Plaintiff's computers and computer systems, both before and after the APA closed on or about March 19, 2009.

53.     Accordingly, Zazza possessed intimate knowledge of and had access to Plaintiff's computers and computer systems.

54.     By virtue of the foregoing, Zazza had access to the Customer List.

55.     Upon information and belief, and despite Plaintiff's security systems in place, Zazza still possesses the ability to access Plaintiff's computers and computer systems and continues to do so without Plaintiff's authorization or consent.

56.     Upon information and belief, Defendants continue to access and use the Customer List, which Plaintiff constantly updates, refines and further develops.

57.     Defendants continue to access and use the Customer List through improper means and in breach of a duty owed to Plaintiff.

58.     Suspicious that Defendants had improperly gained access to Plaintiff's computers and computer systems – and thus the Customer List – Plaintiff planted fictitious names in the Customer List with addresses belonging to Plaintiff and its representatives.

59.     In due course, those fictitious individuals received mailings from Lean Chefs, which could only have been accomplished through unauthorized access to the Customer List.

60.     Since Defendants commenced used of the Customer List, Plaintiff has suffered a decrease in sales and customer base.

**D.    Defendants Ignore Plaintiff's Demand**

61.     By letter dated September 25, 2014, Plaintiff demanded that Defendants immediately cease and desist its egregious unlawful activity.  Annexed hereto as **Exhibit "D"** is a true and correct copy of the aforementioned letter.

62.     In that letter, Plaintiff advised Defendants that absent receiving a satisfactory response by October 1, 2014, it intended to pursue all necessary measures to protect its interests.

63.     Defendants, of course, failed to respond to Plaintiff, forcing Plaintiff to commence this action to seek redress for Defendants' unlawful conduct.

**COUNT I**
**Trademark Infringement 15 U.S.C. § 1114 *et. seq.***
**(Against All Defendants)**

64.     Plaintiff repeats and realleges each of the foregoing paragraphs as if fully set forth herein.

65.     Plaintiff's CHEFS DIET® mark and the goodwill associated therewith are of great and incalculable value, are highly distinctive and have become associated in the minds of the consuming public as offering products and services of the very highest quality.

66.     Defendants, without Plaintiff's authorization or consent, and having knowledge of Plaintiff's well known, prior rights in the CHEFS DIET® mark, have offered and sold goods and services to the consuming public, in or affecting interstate commerce, utilizing the LEAN CHEFS Mark in direct competition with Plaintiff.

67.     In doing so, Defendants are trading on the goodwill and reputation of the CHEFS DIET® mark.

68.     The conduct complained of herein is likely to cause confusion, to cause mistake and/or to deceive the consuming public into mistakenly believing that the goods and services sold by Defendants emanate from, are licensed by or otherwise are affiliated with Plaintiff.

69.     In fact, as set forth above, actual confusion is prevalent.

70.     The acts and conduct complained of herein constitute willful and deliberate infringement of the CHEFS DIET® mark in violation of the Lanham Act, 15 U.S.C. § 1114.

71.     As a direct and proximate consequence of the foregoing, Plaintiff has no adequate remedy at law, has been irreparably harmed and will continue to be irreparably harmed unless Defendants are enjoined from engaging in this infringing conduct and from using the LEAN CHEFS mark or any colorable imitation thereof.

72.     In addition, Plaintiff is entitled to all damages that it has sustained by virtue of Defendants' infringing conduct, in an amount to be determined at trial, including, without limitation, Defendants' profits and gains arising from the wrongful acts described herein, Plaintiff's lost profits, attorneys fees', costs and interest.

73.     Moreover, by virtue of Defendants' willful infringement, Plaintiff is entitled to statutory damages.

74.     Finally, because Defendants' actions are wanton, willful, malicious and have been undertaken in conscious disregard of Plaintiff's rights, Defendants also are liable for punitive damages.

## COUNT II
## Unfair Competition And False Designation Of Origin 15 U.S.C. § 1125
### (Against All Defendants)

75.     Plaintiff repeats and realleges each of the foregoing paragraphs as if fully set forth herein.

76.     The goods and services sold and offered for sale by Defendants under the LEAN CHEFS mark are identical to the goods and services sold by Plaintiff under the CHEFS DIET® mark and, as such, are likely to cause confusion to the purchasing public.

77.     Defendants misrepresent and falsely describe to the general public the origin and source of the infringing goods and services and create a likelihood of confusion among ultimate purchasers as to both the source and sponsorship of same.

78.     In fact, as set forth above, actual confusion is prevalent.

79.     The acts complained of herein constitute false designation of origin and unfair competition within the meaning of the Lanham Act, 15 U.S.C. § 1125.

80.     As a direct and proximate consequence of the foregoing, Plaintiff has no adequate remedy at law, has been irreparably harmed and will continue to be irreparably harmed unless Defendants are enjoined from engaging in the infringing conduct and from using the LEAN CHEFS mark or any colorable imitation thereof.

81.     In addition, Plaintiff is entitled to all damages that it has sustained by virtue of the infringing conduct, in an amount to be determined at trial, including, without limitation, Defendants' profits and gains arising from the wrongful acts described herein, Plaintiff's lost profits, attorneys fees' costs and interest.

82.     Furthermore, because Defendants' actions are wanton, willful, malicious and have been undertaken in conscious disregard of Plaintiff's rights, Defendants also are liable for punitive damages.

**COUNT III**
**Trademark Infringement Under New York Common Law**
**(Against All Defendants)**

83.     Plaintiff repeats and realleges each of the foregoing paragraphs as if fully set forth herein.

84.     Plaintiff possesses strong common law rights in the CHEFS DIET® mark in connection with its sale of food and related services to the public.

85.     Plaintiff has invested substantial time, resources and effort to obtain an excellent reputation for itself, its products and the CHEFS DIET® mark.

86.     Defendants' infringing conduct is intended, among other things, to capitalize on the goodwill associated with the CHEFS DIET® and to create the false impression that LEAN CHEFS is associated with, sponsored by or otherwise affiliated with CHEFS DIET®.

87.     Defendants' infringing conduct has caused and is likely to cause confusion as to the source of Defendants' infringing goods and services, all to the detriment of Plaintiff.

88.     In fact, as set forth above, actual confusion is prevalent.

89.     Defendants' acts are willful, deliberate, intended to confuse the public and intended to injure Plaintiff.

90.     The foregoing constitutes unfair competition under New York common law.

91.     As a direct and proximate consequence of the foregoing, Plaintiff has no adequate remedy at law, has been irreparably harmed and will continue to be irreparably harmed unless Defendants are enjoined from engaging in the infringing conduct and from using the LEAN CHEFS Mark or any colorable imitation thereof.

92.     In addition, Plaintiff is entitled to all damages that it has sustained by virtue of the infringing conduct, in an amount to be determined at trial, including, without limitation, Defendants' profits and gains arising from the wrongful acts described herein, Plaintiff's lost profits, attorneys fees', costs and interest.

93.     Furthermore, because Defendants' actions are wanton, willful, malicious and undertaken in conscious disregard of Plaintiff's rights, Defendants also are liable for punitive damages.

## COUNT IV
## Deceptive Acts And Practices Under N.Y. G.B.L. § 349
### (Against All Defendants)

94.     Plaintiff repeats and realleges each of the foregoing paragraphs as if fully set forth herein.

95.     Defendants, without Plaintiff's authorization or consent, and having knowledge of Plaintiff's well known, prior rights in the CHEFS DIET® mark, have offered and sold the infringing goods and services to the consuming public under the LEAN CHEFS mark in direct competition with Plaintiff.

96.     Defendants' use of the LEAN CHEFS mark is likely to cause and is causing confusion, mistake and deception among the general purchasing public as to the origin of the

infringing goods and services and is likely to deceive the public into believing that the infringing goods and services emanate from, are associated with or otherwise are affiliated with Chefs Diet.

97.     In fact, as set forth above, actual confusion is prevalent.

98.     The foregoing conduct involves public sales activities of a recurring nature.

99.     As a direct and proximate consequence of the foregoing, Plaintiff has no adequate remedy at law, has been irreparably harmed and will continue to be irreparably harmed unless Defendants are enjoined from engaging in the infringing conduct and from using the LEAN CHEFS mark or any colorable imitation thereof.

100.    In addition, Plaintiff is entitled to all damages that it has sustained by virtue of the aforementioned conduct, in an amount to be determined at trial, including, without limitation, Defendants' profits and gains arising from the wrongful acts described herein, Plaintiff's lost profits, attorneys fees', costs and interest.

101.    Furthermore, because Defendants' actions are wanton, willful, malicious and have been undertaken in conscious disregard of Plaintiff's rights, Defendants also are liable for punitive damages.

**COUNT V**
**<u>Breach of Fiduciary Duty</u>**
**(Against Defendants Zazza and Gunning)**

102.    Plaintiff repeats and realleges each of the foregoing paragraphs as if fully set forth herein.

103.    As former agents, Officers and employees of Chefs Diet and CDAC's predecessors-in-interest, Zazza and Gunning owe a duty to Chefs Diet to refrain from using confidential information acquired in the course of their agency to compete with Plaintiff.

104.    The foregoing duty exists even in the absence of a written agreement or express covenant not to compete and survives the conclusion of Zazza and Gunning's agency.

105.    As set forth above, Zazza and Gunning have misappropriated and misused the Customer List to compete with Plaintiff.

106.    Accordingly, Zazza and Gunning have breached the duty of good faith and fair dealing owed to Plaintiff.

107.    As a direct and proximate consequence of the foregoing, Plaintiff has no adequate remedy at law, has been irreparably harmed and will continue to be irreparably harmed unless Defendants are directed to return the Customer List to Plaintiff, are enjoined from using the Customer List, and are enjoined from contacting, soliciting or otherwise providing goods or services to any of the individuals or entities identified on the Customer List.

108.    In addition, Plaintiff is entitled to all damages that it has sustained by virtue of the aforementioned conduct, in an amount to be determined at trial, including, without limitation, Defendants' profits and gains arising from the wrongful acts described herein, Plaintiff's lost profits, attorneys fees', costs and interest.

109.    Furthermore, because Defendants' actions are wanton, willful, malicious and have been undertaken in conscious disregard of Plaintiff's rights, Defendants also are liable for punitive damages.

## COUNT VI
## Misappropriation Of Trade Secrets And Confidential Information
### (Against All Defendants)

110.    Plaintiff repeats and realleges each of the foregoing paragraphs as if fully set forth herein.

111.    The Customer List constitutes a trade secret within the meaning of New York Law because it has been developed through substantial effort and expense, contains information not otherwise readily available to the public, provides Plaintiff with an advantage over competitors and cannot be acquired or otherwise duplicated without extreme difficulty and at great expense.

112.    At all times, Plaintiff has taken reasonable and appropriate measures to maintain the secrecy of the Customer List, including, without limitation, maintaining comprehensive computer security systems.

113.    Despite the foregoing, Defendants, upon information and belief, have misappropriated and acquired the Customer List without Plaintiff's express or implied authority or consent through unlawful and improper means.

114.    Defendants' have misappropriated and used the Customer List to engage in direct competition with Plaintiff in the customized food delivery service marketplace.

115.    The use of the Customer List by Defendants erodes Plaintiff's business advantage and provides Defendants with an unfair competitive advantage that it would not otherwise enjoy.

116.    Defendants' misappropriation of the Customer List was willful, knowing and malicious.

117.    As a direct and proximate consequence of the foregoing, Plaintiff has no adequate remedy at law, has been irreparably harmed and will continue to be irreparably harmed unless Defendants are directed to return the Customer List to Plaintiff, are enjoined from using the Customer List and are enjoined from contacting, soliciting or otherwise providing goods or services to any of the individuals or entities identified on the Customer List.

118.    In addition, Plaintiff is entitled to all damages that it has sustained by virtue of the aforementioned conduct, in an amount to be determined at trial, including, without limitation, Defendants' profits and gains arising from the wrongful acts described herein, Plaintiff's lost profits, attorneys fees', costs and interest.

119.    Furthermore, because Defendants' actions are wanton, willful, malicious and have been undertaken in conscious disregard of Plaintiff's rights, Defendants also are liable for punitive damages.

**COUNT VII**
**Common Law Unfair Competition**
**(Against All Defendants)**

120.    Plaintiff repeats and realleges each of the foregoing paragraphs as if fully set forth herein.

121.    The foregoing acts constitute unfair competition under New York law.

122.    As a direct and proximate consequence of the foregoing, Plaintiff has no adequate remedy at law, has been irreparably harmed and will continue to be irreparably harmed unless Defendants are directed to return the Customer List to Plaintiff, are enjoined from using the Customer List, enjoined from contacting, soliciting or otherwise providing goods or services to any of the individuals or entities identified on the Customer List, enjoined from engaging in the infringing conduct set forth above and enjoined from using the LEAN CHEFS mark or any colorable imitation thereof

123.    In addition, Plaintiff is entitled to all damages that it has sustained by virtue of the aforementioned conduct, in an amount to be determined at trial, including, without limitation, Defendants' profits and gains arising from the wrongful acts described herein, Plaintiff's lost profits, attorneys fees', costs and interest.

124.    Furthermore, because Defendants' actions are wanton, willful, malicious and have been undertaken in conscious disregard of Plaintiff's rights, Defendants also are liable for punitive damages.

## COUNT VIII
## Computer Fraud and Abuse Act,  18 U.S.C. § 1030(a)(2)(C), (a)(4) & (a)(5)(C)
### (Against All Defendants)

125.    Plaintiff repeats and realleges each of the foregoing paragraphs as if fully set forth herein.

126.    Upon information and belief, Defendants have: (i) intentionally accessed Plaintiff's computers and computer systems without Plaintiff's authorization and/or exceeded authorized access to Plaintiff's computers and computer systems and thereby improperly have obtained certain information, including, without limitation, the Customer List; (ii) knowingly, and with intent to defraud, accessed Plaintiff's computers and computer systems without Plaintiff's authorization and/or exceeded authorized access to Plaintiff's computers and computer systems and thereby obtained, among other things, the Customer List, a thing of value, valued well in excess of $5,000; and (iii) intentionally accessed Plaintiff's computers and computer systems, and as a result of such conduct, caused damage and loss within the meaning of the Act.

127.    Plaintiff's computers and computer systems constitute "protected computers" within the meaning of the Computer Fraud and Abuse Act (the "Act") because Plaintiff's computers and computer systems are used in and affect interstate commerce.

128.    Upon information and belief, Defendants accessed or otherwise compromised between 20 and 25 of Plaintiff's computers and/or servers.

129.   As a direct and proximate consequence of the foregoing, Plaintiff has undertaken various investigative and remedial measures and thereby sustained a "loss" in excess of $5,000 during a one-year period within the meaning of 18 U.S.C. § 1030(c)(4)(i)(I).

130.   Among other things, in response to Defendants' unauthorized access to Plaintiff's computer systems, Plaintiff has disabled certain IP addresses, restricted VPN access, added firewall restrictions, reconfigured its Wi-Fi access and undertaken a comprehensive investigation of its computer systems.  In total, Plaintiff estimates that it has spent in excess of 200 hours investigating and responding to Defendant's unlawful access at a cost in excess of $6,000.

131.   18 U.S.C. § 1030(g) confers a private right of action in favor of any person, including, any firm or corporation, who suffers loss or damage within the meaning of the Act.

132.   Accordingly, Plaintiff is entitled to damages in an amount to be determined at trial but in no event less than $6,000, plus attorneys' fees, costs and interest.

133.   Furthermore, because Defendants' actions are wanton, willful, malicious and have been undertaken in conscious disregard of Plaintiff's rights, Defendants also are liable for punitive damages.

## COUNT IX
## Unjust Enrichment
### (Against All Defendants)

134.   Plaintiff repeats and realleges each of the foregoing paragraphs as if fully set forth herein.

135.   Owing to Defendants' infringing conduct, their misappropriation of the Customer List and their violations of 18 U.S.C. § 1030 *et. seq.*, Defendants have diverted substantial revenues from Plaintiff to Lean Chefs.

136.     As a direct and proximate consequence of the foregoing, Defendants have been unjustly enriched at Plaintiff's expense.

137.     It would be against equity and good conscience to permit Defendants to retain the substantial revenues that they have realized through the aforementioned conduct.

138.      Accordingly, Plaintiff is entitled to damages in an amount to be determined at trial, plus attorneys' fees, costs and interest.

139.     Furthermore, because Defendants' actions are wanton, willful, malicious and have been undertaken in conscious disregard of Plaintiff's rights, Defendants also are liable for punitive damages.

**COUNT X**
**Conversion**
**(Against All Defendants)**

140.     Plaintiff repeats and realleges each of the foregoing paragraphs as if fully set forth herein.

141.     Plaintiff is the legal owner of and has an immediate superior right of possession to the Customer List.

142.     Defendants have no legal claim to or right in the Customer List.

143.     Defendants have exercised unauthorized dominion and control over the Customer List to the exclusion of Plaintiff.

144.     Plaintiff has made written demand that Defendants immediately return the Customer List to Plaintiff.

145.     Defendants have refused to return the Customer List to Plaintiff.

146.    As a direct and proximate consequence of the foregoing, Plaintiff has been injured and is entitled to damages in an amount to be determined at trial, plus attorneys' fees, costs and interest.

147.    Furthermore, because Defendants' actions are wanton, willful, malicious and have been undertaken in conscious disregard of Plaintiff's rights, Defendants also are liable for punitive damages.

## COUNT XI
## Replevin
### (Against All Defendants)

148.    Plaintiff repeats and realleges each of the foregoing paragraphs as if fully set forth herein.

149.    Plaintiff is the legal owner of and has an immediate superior right of possession to the Customer List.

150.    Defendants have no legal claim to or right in the Customer List.

151.    Defendants have exercised unauthorized dominion and control over the Customer List to the exclusion of Plaintiff.

152.    Plaintiff has made written demand that Defendants immediately return the Customer List to Plaintiff.

153.    Defendants have refused to return the Customer List to Plaintiff.

154.    As a direct and proximate consequence of the foregoing, Plaintiff has no adequate remedy at law, has been irreparably harmed and will continue to be irreparably harmed unless Defendants are directed to return the Customer List to Plaintiffs, are enjoined from using the Customer List and are enjoined from contacting, soliciting or otherwise providing goods or services to any of the individuals or entities identified on the Customer List.

## COUNT XII
## Breach of Contract
### (Against Zazza and Gunning)

155.     Plaintiff repeats and realleges each of the foregoing paragraphs as if fully set forth herein.

156.     The APA is a valid and binding agreement.

157.     Section 6.7 of the APA expressly prohibits Sellers and any of their "Affiliates," as defined in the APA, from using the "Chefs Diet" trade name or any derivative or variation thereof that is "similar" to Chefs Diet.

158.     Zazza and Gunning are Affiliates within the meaning of the APA.

159.     Zazza and Gunning have breached the APA by forming Lean Chefs and using a trade name, LEAN CHEFS, that is similar to CHEFS DIET®.

160.     As a direct and proximate consequence of the foregoing, Plaintiff has no adequate remedy at law, has been irreparably harmed and will continue to be irreparably harmed unless Zazza and Gunning are enjoined from using the LEAN CHEFS mark, or any colorable imitation thereof, a trade name "similar" to CHEFS DIET®.

161.     In the alternative, Plaintiff is entitled to all damages that it has sustained by virtue of the aforementioned conduct, in an amount to be determined at trial, including, without limitation, Zazza and Gunning's profits and gains arising from the wrongful acts described herein, Plaintiff's lost profits, attorneys fees', costs and interest.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests the following relief:

A.     That Defendants and their parents, affiliates and subsidiaries, their respective officers, shareholders, employees, directors, representatives, agents, attorneys and assigns and all

persons acting for, with, by through or under, be preliminarily and permanently enjoined and restrained from using, affixing, offering for sale, selling, advertising or promoting any goods and services with the LEAN CHEFS mark, or any colorable imitation thereof, that is confusingly similar to the CHEFS DIET® mark;

        B.      That Defendants and their parents, affiliates and subsidiaries, their respective officers, shareholders, employees, directors, representatives, agents, attorneys and assigns and all persons acting for, with, by through or under, be preliminarily and permanently enjoined and restrained from the use of any false descriptions or representations or any false designations of origin or from otherwise committing any acts of unfair competition with respect to Plaintiff and the CHEFS DIET® mark by using the LEAN CHEFS mark, or any colorable imitation thereof, that is confusingly similar to the CHEFS DIET® mark;

        C.      That Defendants and their parents, affiliates and subsidiaries, their respective officers, shareholders, employees, directors, representatives, agents, attorneys and assigns and all persons acting for, with, by through or under, be preliminarily and permanently enjoined and restrained from: (a) using the Customer List and (b) contacting, soliciting or otherwise providing goods or services to any of the individuals or entities identified on the Customer List;

        D.      That Defendants and their parents, affiliates and subsidiaries, their respective officers, shareholders, employees, directors, representatives, agents, attorneys and assigns and all persons acting for, with, by through or under, be directed to return all copies of the Customer List to Plaintiff;

        E.      That the Court order that registration be refused and/or cancelled of Defendants' applications to register LEAN CHEFS, Serial Nos. 86,306,397 and 86,020,475 and that

Defendants be permanently restrained and enjoined from filing any future applications for trademarks that are confusingly similar to Plaintiff's CHEFS DIET® mark;

F.      That the Court award an accounting to Plaintiff for the gains and profits of Defendants, and Plaintiff's corresponding lost profits, for damages sustained by Plaintiff arising from Defendants' unlawful conduct described herein;

G.      That, the Court award Plaintiff damages in an amount to be determined at trial, plus attorneys' fees, costs and interest;

H.      That, on Count VIII, the Court award Plaintiff damages in an amount to be determined at trial, but in no event less than $6,000, plus attorneys' fees, costs and interest;

I.      That the Court award treble damages to Plaintiff owing to the willful, wanton and malicious nature of Defendants' acts;

J.      That the Court award punitive damages to Plaintiff in excess of $2,000,000 owing to the willful, wanton and malicious nature of Defendants' acts;

K.      That Defendants be required to pay to Plaintiff its costs in this action, including reasonable attorneys' fees;

L.      That Plaintiff be granted such other and further relief which as to this Court seems just and proper.

Dated:  New York, New York
         October 21, 2014

                              PRYOR CASHMAN LLP


                              By:    /s/ James S. O'Brien
                                     James S. O'Brien (JO-0858)
                                     jobrien@pryorcashman.com
                                     Dyan Finguerra-DuCharme (DF-9228)
                                     dfinguerra-ducharme@pryorcashman.com
                              7 Times Square
                              New York, New York 10036-6569
                              Telephone:  (212) 421-4100
                              Facsimile:   (212) 326-0806

                              *Attorneys for Plaintiff Chefs Diet*
                              *Acquisition Corp. d/b/a Chefs Diet*

27

# EXHIBIT A

Int. Cls.: 29 and 30

Prior U.S. Cl.: 46

**United States Patent and Trademark Office**

Reg. No. 3,473,541

Registered July 22, 2008

## TRADEMARK
### PRINCIPAL REGISTER

# CHEFS DIET

CHEFS DIET DELIVERY, L.L.C. (NEW YORK LTD LIAB CO), DBA ZONECHEFS, L.L.C., 8608 FOSTER AVENUE BROOKLYN, NY 11236

FOR: PREPARED ENTREES, SIDE DISHES AND MEALS CONSISTING PRIMARILY OF MEAT, POULTRY OR VEGETABLES, IN CLASS 29 (U.S. CL. 46).

FIRST USE 9-1-2007; IN COMMERCE 9-1-2007.

FOR: PREPARED ENTREES, SIDE DISHES AND MEALS CONSISTING PRIMARILY OF RICE AND PASTA; BAKED GOODS CONSISTING OF CAKES, COOKIES AND MUFFINS, IN CLASS 30 (U.S. CL. 46).

FIRST USE 9-1-2007; IN COMMERCE 9-1-2007.

THE MARK CONSISTS OF STANDARD CHARACTERS WITHOUT CLAIM TO ANY PARTICULAR FONT, STYLE, SIZE, OR COLOR.

NO CLAIM IS MADE TO THE EXCLUSIVE RIGHT TO USE "DIET", APART FROM THE MARK AS SHOWN.

SN 77-278,163, FILED 9-12-2007.

MELVIN AXILBUND, EXAMINING ATTORNEY



**United States Patent and Trademark Office**

Home | Site Index | Search | FAQ | Glossary | Guides | Contacts | eBusiness | eBiz alerts | News | Help

## Trademarks > Trademark Electronic Search System (TESS)

*TESS was last updated on Tue Oct 7 03:21:02 EDT 2014*

| TESS HOME | NEW USER | STRUCTURED | FREE FORM | BROWSE DICT | SEARCH OG | BOTTOM | HELP | PREV LIST | CURR LIST |
| NEXT LIST | FIRST DOC | PREV DOC | NEXT DOC | LAST DOC |

Logout | Please logout when you are done to release system resources allocated for you.

Start | List At: [        ] OR Jump | to record: [        ] **Record 2 out of 4**

TSDR | ASSIGN STATUS | TTAB STATUS | *( Use the "Back" button of the Internet Browser to return to TESS)*

# CHEFS DIET

| | |
|---|---|
| **Word Mark** | CHEFS DIET |
| **Goods and Services** | IC 029. US 046. G & S: Prepared Entrees, Side Dishes and Meals consisting primarily of meat, poultry or vegetables. FIRST USE: 20070901. FIRST USE IN COMMERCE: 20070901 |
| | IC 030. US 046. G & S: Prepared entrees, side dishes and meals consisting primarily of rice and pasta; baked goods consisting of cakes, cookies and muffins. FIRST USE: 20070901. FIRST USE IN COMMERCE: 20070901 |
| **Standard Characters Claimed** | |
| **Mark Drawing Code** | (4) STANDARD CHARACTER MARK |
| **Serial Number** | 77278163 |
| **Filing Date** | September 12, 2007 |
| **Current Basis** | 1A |
| **Original Filing Basis** | 1B |
| **Published for Opposition** | December 4, 2007 |
| **Registration Number** | 3473541 |
| **Registration Date** | July 22, 2008 |
| **Owner** | (REGISTRANT) Chefs Diet Delivery, L.L.C. DBA ZoneChefs, L.L.C. LIMITED LIABILITY COMPANY NEW YORK 8608 Foster Avenue Brooklyn NEW YORK 11236 |

|  | (LAST LISTED OWNER) CHEFS DIET ACQUISITION CORP. CORPORATION DELAWARE 108 West 39 Street Room 902 New York NEW YORK 10018 |
|---|---|
| **Assignment Recorded** | ASSIGNMENT RECORDED |
| **Attorney of Record** | Dyan Finguerra-DuCharme |
| **Disclaimer** | NO CLAIM IS MADE TO THE EXCLUSIVE RIGHT TO USE "DIET" APART FROM THE MARK AS SHOWN |
| **Type of Mark** | TRADEMARK |
| **Register** | PRINCIPAL |
| **Affidavit Text** | SECT 15. SECT 8 (6-YR). |
| **Live/Dead Indicator** | LIVE |

TESS HOME  NEW USER  STRUCTURED  FREE FORM  BROWSE DICT  SEARCH OG  Top  HELP  PREV LIST  CURR LIST

NEXT LIST  FIRST DOC  PREV DOC  NEXT DOC  LAST DOC

|.HOME | SITE INDEX| SEARCH | eBUSINESS | HELP | PRIVACY POLICY

# EXHIBIT B

Int. Cl.: 39

Prior U.S. Cls.: 100 and 105

**United States Patent and Trademark Office**

Reg. No. 3,404,634

Registered Apr. 1, 2008

**SERVICE MARK**
**PRINCIPAL REGISTER**



ZONECHEFS, L.L.C. (NEW YORK LTD LIAB CO)
8608 FOSTER AVENUE
BROOKLYN, NY 11236

FOR: FOOD DELIVERY SERVICES, IN CLASS 39
(U.S. CLS. 100 AND 105).

FIRST USE 2-1-2007; IN COMMERCE 3-1-2007.

THE MARK CONSISTS OF A DISH WITH THE
TERM "CHEFS DIET" WRITTEN ON IT WITH A
CHEFS HAT HANGING FROM ITS UPPER RIGHT
HAND CORNER.

SER. NO. 77-208,201, FILED 6-18-2007.

DANNEAN HETZEL, EXAMINING ATTORNEY



**United States Patent and Trademark Office**

Home | Site Index | Search | FAQ | Glossary | Guides | Contacts | eBusiness | eBiz alerts | News | Help

## Trademarks > Trademark Electronic Search System (TESS)

*TESS was last updated on Tue Oct 7 03:21:02 EDT 2014*

| TESS HOME | NEW USER | STRUCTURED | FREE FORM | BROWSE DICT | SEARCH OG | BOTTOM | HELP | PREV LIST | CURR LIST |

| NEXT LIST | FIRST DOC | PREV DOC | NEXT DOC | LAST DOC |

Logout  Please logout when you are done to release system resources allocated for you.

Start  List At: [          ]  OR  Jump  to record: [          ]  **Record 3 out of 4**

TSDR  ASSIGN status  TTAB status  *( Use the "Back" button of the Internet Browser to return to TESS)*



| | |
|---|---|
| **Word Mark** | CHEFS DIET |
| **Goods and Services** | IC 039. US 100 105. G & S: Food Delivery Services. FIRST USE: 20070201. FIRST USE IN COMMERCE: 20070301 |
| **Mark Drawing Code** | (3) DESIGN PLUS WORDS, LETTERS, AND/OR NUMBERS |
| **Design Search Code** | 09.05.06 - Chef's Hat<br>11.03.09 - Paper plates, empty; Plates, dinnerware, empty<br>26.01.17 - Circles, two concentric; Concentric circles, two; Two concentric circles<br>26.01.21 - Circles that are totally or partially shaded. |
| **Trademark Search Facility Classification Code** | ART-09.05 Headwear<br>ART-11.03 Containers for beverages; plates and dishes; cooking and serving ware (Non-electric)<br>SHAPES-CIRCLE Circle figures or designs including semi-circles and incomplete circles |
| **Serial Number** | 77208201 |
| **Filing Date** | June 18, 2007 |
| **Current Basis** | 1A |
| **Original Filing Basis** | 1A |
| **Published for Opposition** | January 15, 2008 |
| **Registration Number** | 3404634 |
| **Registration Date** | April 1, 2008 |

| | |
|---|---|
| Owner | (REGISTRANT) ZoneChefs, L.L.C. LIMITED LIABILITY COMPANY NEW YORK 8608 Foster Avenue Brooklyn NEW YORK 11236 |
| | (LAST LISTED OWNER) CHEFS DIET ACQUISITION CORP. CORPORATION DELAWARE 108 West 39th Street Room 902 New York NEW YORK 10018 |
| Assignment Recorded | ASSIGNMENT RECORDED |
| Attorney of Record | Dyan Finguerra-DuCharme |
| Description of Mark | Color is not claimed as a feature of the mark. The mark consists of A dish with the term "Chefs Diet" written on it with a Chefs Hat hanging from its upper right hand corner. |
| Type of Mark | SERVICE MARK |
| Register | PRINCIPAL |
| Affidavit Text | SECT 15. SECT 8 (6-YR). |
| Live/Dead Indicator | LIVE |

TESS HOME | NEW USER | STRUCTURED | FREE FORM | BROWSE DICT | SEARCH OG | TOP | HELP | PREV LIST | CURR LIST

NEXT LIST | FIRST DOC | PREV DOC | NEXT DOC | LAST DOC

|.HOME | SITE INDEX| SEARCH | eBUSINESS | HELP | PRIVACY POLICY

EXHIBIT C

# LOSE WEIGHT, WHILE FEELING GREAT!

Lean Chefs will help you to meet all of your nutritional goals even as you reduce your calorie intake. Our varied menus feature 120 days of gourmet variety. All meals are prepared fresh by Lean Chefs' team of award winning chefs in our state of the art kitchen. Never frozen or freeze dried. No long term commitments. 100% Satisfaction or Money Back Guarantee. ***

We deliver 3 satisfying meals and 2 mouth watering snacks each morning before 5 am. Best of all, you will never feel like you are on a diet. Now you can eat cupcakes, cheesecakes, lasagna and Kobe Beef Sliders and still lose 2-3 lbs per week. All meals are perfectly balanced to help you to lose weight at the quickest possible rate. This summer we are delivering to the Jersey Shore & the Hamptons.

❖❖❖ Complete satisfaction or receive a refund for your unused paid days on Lean Chefs.

AVAILABLE IN
GLUTEN FREE & VEGETARIAN

## www.LeanChefs.com

## CALL NOW: 888-905-7186



590 Madison Avenue Suite 200
New York, NY 10022

15

Joann Glodek
102 Brandywyne Drive
Florham Park NJ 07932-2849

Presorted Standard
US Postage
**PAID**
Brooklyn, NY
Permit #84







# Is your New Years Resolution To lose weight and feel great?

Lean Chefs will help you to meet all of your nutritional goals. 120 days of gourmet variety. No Long term commitments. **100% Satisfaction or Money Back Guarantee.**✦✦✦ All meals are prepared by Lean Chefs' team of award winning chefs in our state of the art kitchen.

We deliver 3 satisfying meals and 2 mouth watering snacks each morning before 5 am. Best of all, you will never feel like you are on a diet. All of our meals are prepared fresh and delivered daily. Never frozen or freeze dried. Now you can eat cupcakes, cheesecake, and lasagna and still lose 2 - 3 lbs per week.

All meals are perfectly balanced to help you to lose weight at the quickest possible rate.

**Start 2014 right.**     **Call Now!**     888-405-0468

✦✦✦ Complete satisfaction or receive a refund for your unused paid days.




## www.LeanChefs.com

**590 Madison Avenue Suite 200
New York, NY 10022**

Presorted Standard
US Postage
**PAID**
Brooklyn, NY
Permit #84

Joann Glotzk
462 Brandywyne Drive
Florham Park NJ 07932-2849

12
6

# CALL NOW: 888-405-0468



**$24.95**
per day
(for 31 Day Programs)

# The #1 Gourmet
# Diet Delivery Service
## in New York just got even better!







www.LeanChefs.com        CALL NOW: 888-405-0468

# Is your New Years Resolution To lose weight and feel great?

Lean Chefs will help you to meet all of your nutritional goals. 120 days of gourmet variety. No Long term commitments. **100% Satisfaction or Money Back Guarantee.**✧✧✧ All meals are prepared by Lean Chefs' team of award winning chefs in our state of the art kitchen.

We deliver 3 satisfying meals and 2 mouth watering snacks each morning before 5 am. Best of all, you will never feel like you are on a diet. All of our meals are prepared fresh and delivered daily. Never frozen or freeze dried. Now you can eat cupcakes, cheesecake, and lasagna and still lose 2 lbs - 3 lbs per week.

All meals are perfectly balanced to help you to lose weight at the quickest possible rate.

**Start 2014 right.**       **Call Now!**       **888-405-0468**

✧✧✧ Complete satisfaction or receive a refund for your unused paid days on Lean Chefs.




# www.LeanChefs.com



590 Madison Avenue Suite 200
New York, NY 10022

Presorted Standard
US Postage
**PAID**
Brooklyn, NY
Permit #64

Brenda Utilla
2225 East 74th Street
Brooklyn NY 11234-6603

# CALL NOW: 888-405-0468

# EXHIBIT D



# PRYOR CASHMAN LLP

New York | Los Angeles

7 Times Square, New York, NY 10036-6569   Tel: 212-421-4100   Fax: 212-326-0806          www.pryorcashman.com

**James S. O'Brien, Jr.**
Partner

Direct Tel: 212-326-0121
Direct Fax: 212-798-6317
jobrien@pryorcashman.com

September 25, 2014

<u>VIA FEDERAL EXPRESS</u>

Mr. Arthur Gunning
Mr. Nicholas Zazza
Lean Chefs, LLC
590 Madison Avenue
New York, NY 10022

12 Five Points Road
Freehold, NJ 07728

Re:   <u>Lean Chefs, LLC's Unlawful Activities</u>

Dear Messrs. Gunning and Zazza:

We are litigation counsel to Chefs Diet Acquisition Corp. ("Chefs Diet") and write regarding Lean Chefs, LLC's ("Lean Chefs") egregious unlawful activity arising from its unauthorized use of certain intellectual property owned by Chefs Diet.

As you know, Chefs Diet, a five-star gourmet diet delivery service, purchased certain intellectual property and confidential information in connection with the Second Amended And Restated Asset Purchase Agreement dated March 18, 2009 (the "APA"). In particular, Chefs Diet purchased and owns: (i) CHEFS DIET®, U.S. Reg. No. 3,473,541, in Classes 29, 30 and 46; (ii) CHEFS DIET®, U.S. Reg. No. 3,404,634, in Class 39; and (iii) the Customer Lists (as that term is defined in the APA).

Over the last seven years, the CHEFS DIET® mark has become widely recognized to identify Chefs Diet as the sole source of the high quality goods and services bearing its name. Indeed, Chefs Diet is a leader in the marketplace owing to the high quality of and significant demand for the products and services it sells under the CHEFS DIET® name. The CHEFS DIET® program has been the subject of widespread critical acclaim and featured in national magazines such as *Modern Bride*, *Life & Style*, and *Women's Day*, among others. Without doubt, the CHEFS DIET® mark is an invaluable commercial asset.

Likewise, the Customer Lists – purchased in connection with the APA and further developed since that time – required substantial effort and expense to develop, contain

1356107

**PRYOR CASHMAN LLP**

Lean Chefs, LLC
September 25, 2014
Page 2

information not otherwise readily available to the public and provide Chefs Diet with an advantage over competitors. The Customer Lists are therefore an invaluable commercial asset.

It has come to Chefs Diet's attention that Lean Chefs is using the mark LEAN CHEFS for use in connection with a diet program and home delivery service of prepared meals. The LEAN CHEFS mark is substantially similar to the CHEFS DIET® mark in sight, sound, meaning and commercial impression. In particular, the marks are visually and aurally similar given that "Chefs" is the dominant term of each mark, each mark prominently features the color green and each mark elicits imagery associated with food products conducive to weight-loss. Because both marks create the same commercial impression and are used on identical goods and services, consumers are likely to mistakenly believe that the goods and services bearing the LEAN CHEFS mark emanate from, are licensed by or otherwise are affiliated with Chefs Diet. In fact, over the last few weeks, consumers have called the Chefs Diet customer-service center mistakenly believing that Chefs Diet is affiliated with Lean Chefs. Evidence of actual confusion strongly supports our claim that use of the LEAN CHEFS mark constitutes federal trademark infringement and unfair competition under the Lanham Act, 15 U.S.C. §§ 1114 and 1125, and various State law provisions.

Likewise, it has come to Chefs Diet's attention that Lean Chefs has misappropriated the Customer Lists purchased in connection with the APA and is improperly using the Customer Lists to contact Chefs Diet customers and elicit business. The Customer Lists constitute a trade secret within the meaning of New York Law – they were developed through substantial effort and expense, contain information not otherwise readily ascertainable, cannot be acquired or otherwise duplicated without extreme difficulty and at great expense and provide Chefs Diet with a competitive advantage in the marketplace. Accordingly, Lean Chefs' misappropriation of the Customer Lists is actionable under New York common law and confers claims in favor of Chefs Diet for, among other things, misappropriation of trade secrets, conversion and replevin.[1]

Demand is hereby made that Lean Chefs take immediate steps to cease its unlawful conduct. In particular, Chefs Diet hereby demands that Lean Chefs immediately:

1. expressly abandon its applications, Serial Nos. 86,306,397 and 86,020,475, to register the LEAN CHEFS mark with the USPTO;

2. cease any and all sales and promotions of any and all products and services that bear the LEAN CHEFS mark;

---

[1] In addition, Chefs Diet has reason to believe that Lean Chefs has violated the Computer Fraud and Abuse Act, 18 U.S.C. § 1030 *et. seq.*

1356107

# PRYOR CASHMAN LLP

Lean Chefs, LLC
September 25, 2014
Page 3

3.  desist from any and all unauthorized uses of the CHEFS DIET® mark, or any colorable imitation thereof, including but not limited to the LEAN CHEFS mark;

4.  provide a full accounting of all revenues derived from your sale of goods and services bearing the LEAN CHEFS mark, or any colorable imitation thereto, as well as documentation supporting such accounting, including invoices;

5.  deactivate the website located at <leanchefs.com>;

6.  unlock the website located at <leanchefs.com> to allow it to be transferred and provide us with the authorization code to facilitate such transfer;

7.  return any and all copies of the Customer Lists, including, without limitation, digital copies of the Customer Lists; and

8.  cease and desist from contacting, soliciting or otherwise providing goods or services to any of the individuals or entities identified on the Customer Lists.

Should we not receive a satisfactory response by October 1, 2014, we will take all necessary measures to protect our client's interests without further notice to you.

Please be advised that this letter is sent without prejudice to our client's rights and remedies, all of which are expressly reserved.

Very truly yours,

James S. O'Brien, Jr.

1356107