```
                                                                          1
     F2dQcheC


 1   UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
 2   ------------------------------x

 3   CHEFS DIET ACQUISITION CORP

 4              Plaintiff

 5         v.                             14 CV 8467 (JMF)

 6   LEAN CHEFS, LLC, NICHOLAS
     ZAZZA ARTHUR GUNNING
 7
                Defendants
 8
     ------------------------------x
 9                                        New York, N.Y.
                                          February 13, 2015
10                                        11:00 a.m.

11   Before:

12                      HON. JESSE M. FURMAN

13                                        District Judge

14                          APPEARANCES

15   PRYOR CASHMAN
          Attorneys for Plaintiffs
16   JAMES O'BRIEN, JR
     ANDREW M. GOLDSMITH
17

18   MEREDITH KEYHANI
          Attorneys for Defendant
19   DARIUSH KEYHANI

20

21

22

23

24

25


                     SOUTHERN DISTRICT REPORTERS, P.C.
                              (212) 805-0300
```

                                                                      2
         F2dQcheC

1               (In open court; case called)
2               MR. O'BRIEN:  Good morning, your Honor.  James O'Brien
3    from Pryor Cashman.  With me is Andrew Goldsmith.
4               MR. KEYHANI:  Good morning, your Honor.  Dariush
5    Keyhani.  I'm counsel for the defendants.  I have my client
6    here, Mr. Nick Zazza, on behalf of the defendants, your Honor.
7               THE COURT:  Good morning to you as well.
8               We are here as a result of the joint letter I received
9    essentially proposing that the PI be consolidated with the
10   trial on the merits.
11              Here is my concern:  I certainly think I have
12   discussed this issue a couple of times.  Number one, I think it
13   often makes sense to proceed in that manner.  Number two, I
14   sort of have the increasing sense that it would make sense
15   here, given what I saw is a substantial overlap of the issues
16   to be litigated in the preliminary injunction and the issues to
17   be tried.
18              My concern is that on, I think, the two prior
19   occasions I've seen you, the plaintiffs have been fairly
20   adamant that they did not want to proceed in that manner, and
21   that in their view there was not a sufficient overlap, and that
22   they wanted a relatively swift decision on the PI.  And it
23   wasn't until the last couple of days in the wake of the motion
24   that was filed to be relieved as counsel that that position
25   changed.

                                                                    3
         F2dQcheC

1                  Maybe I'm reading too much into it.  It just caused me
2        concern that because we are days away from the deadline to file
3        the joint prehearing materials that you are required to file,
4        That I was concerned about the possibility that, in essence,
5        this is a strategic gambit to buy more time more than an actual
6        change of heart in decision that consolidation for trial on the
7        merits actually makes sense or is in your client's interest.
8                  So I figured I should bring you in and discuss it and
9        at least raise that concern and hear your thoughts.  So you may
10       proceed.
11                 MR. O'BRIEN:  Your, Honor a couple of things happened
12       since your Honor initially suggested that we consolidate.  One
13       is that we had depositions, and we learned that there's no
14       factual issue about defendants having our list of names.
15       That's now been cleared up.  They do.  There's no dispute about
16       that.  As a legal matter, whether they are entitled to use them
17       is separate question.
18                 Also, your Honor --
19                 THE COURT:  Can I interrupt for one moment?  I recall
20       there being two issues in that regard.  One was whether they
21       had the list of names, essentially, whether they got the list
22       at some point in the past; and the second was whether, in
23       essence, they were hacking into the system in some realtime
24       basis to get updates to that list.
25                 MR. O'BRIEN:  We do not have direct evidence of

 4
F2dQcheC

1    continued access to our database.  We have anecdotal evidence
2    which will come to the fore, but I don't think that is going to
3    be so much of the issue.  It is whether they have the right to
4    have used the names in the way that they did.
5              Another thing that happened just recently is counsel
6    for the defendants and I had a conversation in which we
7    discussed a number of things, settlement being one of them.
8              We also discussed that if they would agree not to use
9    the customers on the list that they didn't get legitimately
10   from purchasing names pending the outcome of this, that would
11   maintain the status quo and we could have our costs, we could
12   cut them in one-half by consolidating.
13             So, for that reason, it seems to be a good thing to
14   do.  We are going to have one hearing, and during the time it
15   takes us to get there, they're agreeing not to solicit the
16   names on our list that they haven't purchased otherwise
17   legitimately.
18             THE COURT:  OK.  Mr. Keyhani.
19             MR. KEYHANI:  Yes, your Honor.  We came to
20   agreement -- I think Mr. O'Brien correctly stated it, but I
21   just want to make a clarification.  We came to an agreement
22   that our clients would not use any of the data or solicit any
23   customers on data that were uniquely or only on data sets that
24   were provided from the plaintiff to our clients.
25             Now, as a matter of clarification, there are customers

F2dQcheC

5

1   that our client purchases in the marketplace, and our expert
2   has verified there are a lot of those that overlap between the
3   purchase data and customers on that list.  To the extent there
4   is overlap our client will use, but if it is uniquely and it
5   was only found on a data set that was provided by the plaintiff
6   to our client, our client has actually already -- prior to our
7   negotiation, has agreed not to use that data until the issue is
8   clarified and determined in this case as to the rights relating
9   to that data, your Honor.
10          THE COURT:  Mr. O'Brien, is that correct?
11          MR. O'BRIEN:  It's correct, your Honor.
12          Here is the situation:  If today they buy a list and
13   there are names on the list that happened to be on our customer
14   list which we claim they wrongly have, then we can't stop them
15   from soliciting them.  That's the reality because we don't have
16   a non-compete.  We have trade secret.  To the extent those
17   names pop up on a list they buy, they're free to solicit them.
18          However, what we have a disagreement here -- and this
19   we hashed out when whenever were looking for damages and
20   liability -- they know the list of names.  To the extent it's
21   possible to go out into the marketplace and try to find those
22   names, that's a different situation.
23          Also, the fact that they uncover a name John Smith
24   tomorrow from purchasing it doesn't change the fact that they
25   had John Smith's name and solicited him two years ago when they

                                                                        6
    F2dQcheC

 1   weren't supposed to have it.
 2           THE COURT:  That's an issue of damages.
 3           MR. O'BRIEN:  Yes, your Honor.
 4           THE COURT:  That doesn't affect the interim relief
 5   that may or may not have been agreed to.
 6           MR. O'BRIEN:  That's correct.
 7           THE COURT:  My concern is ensuring we are on the same
 8   page with respect to any interim relief or whether it's just
 9   relief and agreement on the record.
10           MR. O'BRIEN:  The names that are on our customer list
11   they have, which they have not purchased or legitimately
12   obtained elsewhere, they will not solicit those names.
13           I understand that counsel is saying that they are
14   going to continue to purchase names.  To the extent they
15   purchase names in the interim that happen to be on our list,
16   they have the right to solicit those.
17           THE COURT:  But the first concern you raised was, in
18   essence, to ensure -- I thought there was a concern that
19   purchasing somebody's name or a list containing someone's name,
20   you wanted some sort of assurance that that was truly
21   independent of whatever list, which is to say, let's say John
22   Doe is on your list, to protect against their going out to
23   someone and saying, hey, you know, by any chance is John Doe on
24   your list?  And when they get an affirmative answer, they give
25   $5 to whoever's list that is, and that then cleanses, if you

F2dQcheC

7

1    will, you know, John Doe going forward, putting aside the
2    damages in the past.
3             That would be a little sneaky, so I'm assuming they
4    won't do that, but I want to be sure the terms of the agreement
5    are understood and there is no ambiguity there.
6             MR. O'BRIEN:  They're understood, your Honor.
7             The discovery that will take place, which is going to
8    be open discovery, there will be questions asked of the data
9    providers the extent they can be identified, so we will be able
10   to deal with those issue in the future.
11            THE COURT:  Mr. Keyhani, let me put it to you
12   directly:  Is the agreement, if you will, on the record that
13   you won't solicit any names that are unique to their list or --
14   well, you heard my concern.
15            MR. KEYHANI:  Yes.
16            THE COURT:  Can you provide assurances to me that
17   there is not an easy way around this?
18            MR. KEYHANI:  Yes, absolutely, your Honor.
19            Our client -- the way lists are purchased in the
20   industry, as I've learned through this litigation experience,
21   is you go out to a trade show or to a company that sells data
22   and you buy data based on various geographic or demographic
23   parameters.  That is how our client would continue to purchase
24   data.
25            So there wouldn't be a situation where, your Honor,

1  our client would take a name that uniquely appears -- uniquely,
2  I say, that only appears on a data file that was provided by
3  the plaintiff to defendants and then go solicit customers on
4  that basis.  Or solicit lists that include that customer on
5  that basis.  That wouldn't occur.  It's never occurred and
6  wouldn't occur.  And we're fine with that because that's not
7  the way it's done.  I think it is already implicit and
8  understood, your Honor.  We have argued this and for the record
9  we believe the entire customer lists or substantially the
10 entire customer lists are in the public domain anyway.
11 Nevertheless, we are going to stipulate in the interim to this
12 arrangement to protect the status quo.
13         THE COURT:  I guess my instinct is that it would make
14 sense for you to submit some sort of proposed order
15 memorializing that interim relief or interim agreement just to
16 ensure there is no ambiguity as to what it is so that in the
17 event there is an allegation that the defendant is breaching
18 that agreement, that there is no ambiguity.
19         MR. KEYHANI:  Sure.
20         THE COURT:  I think that would be in everybody's
21 interest.
22         MR. KEYHANI:  Yes.
23         MR. O'BRIEN:  That's fine, your Honor.  We are happy
24 to do that.  I just want to make clear that this piece of it
25 where they are going to continue to purchase names and if they

F2dQcheC

9

1   come across names in the future, they can solicit those.  We
2   are not waiving our rights to claim damages or claim it's
3   wrong.  It's just for the interim, that's the deal.
4           THE COURT:  I understand.  And I understand you're
5   reserving your rights to seek damages for anything and
6   everything related to these names; but to the extent they are
7   sort of preliminary or injunctive relief of some sort that is
8   being consented to, I think it is important for everybody to
9   sure that the terms of that are unambiguous.
10          Why don't you discuss that and submit a proposed order
11  to me through orders and judgments, making clear this is
12  interim and so forth, but just making sure the terms of it are
13  clear.  Why don't you do that by next Friday?  Is that
14  reasonable?
15          MR. KEYHANI:  No problem.
16          MR. O'BRIEN:  That's fine, your Honor.
17          THE COURT:  Turning then to the schedule.  Obviously,
18  the time to file any of the opposition to the motion to
19  withdraw has not yet run, but do you have any further
20  information on that score?
21          MR. O'BRIEN:  No, your Honor, I don't have any further
22  information.  We are continuing to represent our client
23  zealously.  We are prepared -- we were prepared to file all the
24  paperwork on Tuesday.  We are done with that.  But I believe
25  this is probably in our client's best interest.  But I don't

F2dQcheC                                                                        10

1    have an update on the motion, your Honor.
2             THE COURT:  If I were to grant the motion, do you have
3    any information concerning and quickly your client would retain
4    now counsel?
5             MR. O'BRIEN:  I can't make a representation.  I can
6    tell you they are speaking to a partner at Schulte.  That's all
7    I know.  I don't know what those conversations have entailed.
8             THE COURT:  I think it probably is in everybody's
9    interest, including my own, to consolidate the preliminary
10   injunction with a trial on the merits for reasons that I had
11   previously articulated.  So I am OK with that proposal.
12            I guess that leaves us to discuss the schedule going
13   forward, since I think I had pegged the post preliminary
14   injunction discovery deadlines, if you will, to my ruling on
15   that.  I think we ought to spell out what the schedule is going
16   to be going forward.
17            Mr. O'Brien, what are your thoughts on that?  On the
18   one hand, I don't want to be naïve and unrealistic visa vis, a
19   motion to withdraw, which may or may not be granted; but if it
20   is granted, certainly, new counsel is going to have to abide by
21   any schedule that will be set, so keep that in mind.
22            MR. O'BRIEN:  We had suggested in our letter, your
23   Honor, that we can complete discovery by mid-May.  That is
24   contemplating us doing it.  I am not going to have you guess
25   about the likelihood of our doing it, but given the

1    consideration that it may not be us doing it and new counsel
2    would have to get up to speed, I would say mid-June because
3    really what has to happen now is we have damages, we have some
4    forensics, we want to have our experts look at the files,
5    possibly look at some hardware to determine whether names were
6    added or deleted from certain files, and we think that could
7    happen with new counsel by mid-June.
8             THE COURT:  What about expert discovery or does that
9    include expert discovery?
10            MR. O'BRIEN:  Both experts have done reports on the
11   lists and the overlap.  We would want the expert again to do
12   some forensics.  I don't have a good handle on that, but I will
13   say a month.
14            MR. KEYHANI:  30 to 40 days, yes.
15            MR. O'BRIEN:  That's fairly brief in my experience,
16   but I think we can do it.
17            THE COURT:  Mr. Keyhani?
18            MR. KEYHANI:  We are fine with that.  Why don't we
19   do -- did you say fact discovery by June?  Yes?  We can agree
20   to that.  And maybe like 40 days to complete expert discovery
21   and that would give them the new counsel, if that becomes the
22   case enough time, and that would be fine with us.
23            THE COURT:  Then you may not be able to speak to it at
24   the moment, but would you anticipate motions for summary
25   judgment being filed?

1               MR. KEYHANI:  We might be filing a motion for summary
2     judgment, your Honor, on our side.
3               MR. O'BRIEN:  I think it is unlikely given the factual
4     nature of things but it is certainly a possible.
5               THE COURT:  Does your client understand by consenting
6     to this and giving up the preliminary injunction hearing if
7     discovery doesn't end until sometime in July and defendant's
8     file a summary judgment motion within 30 days of discovery
9     closing, and it takes me however many months it takes me to
10    resolve that, not because it will be difficult but because I
11    have many other cases.  We are not talking about a trial, if it
12    even comes to a trial maybe later this year if then, your
13    client is aware of that?
14              MR. O'BRIEN:  Yes, your Honor.
15              THE COURT:  And you believe given that it is your
16    obligation to zealously advocate delegate your client's
17    interest that that is in your client's interest.
18              MR. O'BRIEN:  As long as we are maintaining the status
19    quo and that the damage is interrupted or stopped because
20    they're not soliciting the client.  Certainly, the competitive
21    nature of the business is something that they're going to have
22    to deal with, but if they are promising not to poach our
23    clients I think it is going to be in the best interest of my
24    client.
25              THE COURT:  All right.  I will, as I said, proceed in

1    that manner because I think it is certainly more efficient and
2    the interim relief protects the plaintiff sufficiently in the
3    meantime, then I think it does make sense.
4            So I am going to give you until May 29 to complete
5    fact discovery.  That is a little more time than Mr. O'Brien
6    indicated that he would need and a little less time that he
7    indicated if he would want if he were new counsel.  I am
8    agreeing that when it arises, which is to say, new counsel can
9    either abide by that or make whatever application it wants, and
10   I will consider that if of when it happens.
11           The deadline for completion of expert discovery will
12   be July 17.  And under the terms of my case management plan,
13   any motions for summary judgment or any Daubert motions will be
14   due 30 days from that date, so by August 17, which is that
15   Monday.
16           I will have you guys back toward the end of fact
17   discovery, say, on June 2 at 3:15 in the afternoon, at which
18   point we can take stock of where things are and where things
19   are likely to go.
20           I can't remember if I had entered a standard case
21   management plan in this case or not given it was on a
22   preliminary injunction schedule, but I will go ahead and do
23   that.  I will also include in that some interim discovery
24   dates.  Keep in mind that those dates are subject to change by
25   written agreement between counsel.  You don't need permission

                                                                  14
        F2dQcheC

 1    to change those dates.  You do need permission to change the
 2    two dates that I just set; namely, May 29 and July 17.
 3              Do not assume that you will get more time, either you,
 4    Mr. O'Brien or that of new counsel, and if there is an
 5    application, it has to be filed in writing on ECF as a letter
 6    motion, and it should provide a good case or explanation for
 7    why you were not able to do what you were supposed to do by
 8    those dates.  Be mindful that you've already had a decent
 9    amount of time to conduct discovery as well.
10              I think I've already discussed with you the process
11    for resolving discovery disputes, so I don't need to go into
12    that.
13              The last question I have is, to the extent you are
14    discussing settlement, if there is any way that the Court can
15    facilitate that, or the assigned magistrate judge or otherwise,
16    any thoughts on that?
17              MR. O'BRIEN:  I would not be adverse, your Honor, to
18    having a settlement conference with a magistrate judge.  I have
19    had very, very good experiences with magistrate judges in that
20    context.
21              THE COURT:  Mr. Keyhani?
22              MR. KEYHANI:  Yes, your Honor.  We would be OK with
23    that as well.
24              THE COURT:  Any views on when that would be most
25    helpful or are there things you need beforehand to facilitate

                    SOUTHERN DISTRICT REPORTERS, P.C.
                              (212) 805-0300

F2dQcheC

15

1  meaningful discussions?
2          MR. O'BRIEN:  I could tell you the theoretical
3  structure of the settlement, can I?
4          THE COURT:  No.
5          MR. O'BRIEN:  OK.  Then we need to get a better handle
6  on damages because that's a component of the settlement.  So we
7  have to figure out -- I will take a pencil and paper and get
8  some exact numbers for damages, which we have not done yet
9  because it wasn't really time for that.  But that will be
10 helpful if we do that.
11         THE COURT:  When would that be?
12         MR. O'BRIEN:  Maybe a month?
13         MR. KEYHANI:  That's fine.
14         MR. O'BRIEN:  Or we could do it the end of fact
15 discovery, your Honor.
16         MR. KEYHANI:  The end of fact discovery would be
17 preferable.
18         THE COURT:  Why don't I do this:  I am going to
19 require you by March 27 to contact Judge Ellis, who is the
20 assigned magistrate judge, for purposes of scheduling a
21 settlement conference sometime in April or May.  I will leave
22 it open and you can discuss the most useful timetable.
23         Also, by March 27, the status of plaintiff's counsel
24 should presumably be sorted out.  That may have some bearing on
25 the question as well.

F2dQcheC 16

1          I did, I think, neglect to ask you -- and I'm not sure
2    of the answer to this:  There is a jury demand.  Both sides
3    have made a jury demand.  The trial in this matter would
4    obviously be a jury trial?  I assume there is no jury trial
5    right as to everything in it, but is that the contemplation?
6          MR. O'BRIEN:  Well, it still is, your Honor.  It is
7    probably too early to say that we've changed our mind about
8    that.
9          THE COURT:  OK.  In essence, I guess when we're
10   talking about consolidating the PI and the trial on the merits,
11   in many respects, we're just talking about, I think,
12   withdrawing the PI and proceeding on a normal schedule.
13         Is that a fair statement, Mr. O'Brien?
14         MR. O'BRIEN:  That is a fair statement, your Honor,
15   but at the moment, do I have to make that decision right now,
16   your Honor?
17         THE COURT:  No, but why don't you make it by next
18   Friday, and if that is what we're talking about, then you can
19   include that in the terms of whatever proposed order you
20   submit.
21         MR. O'BRIEN:  So if we are proceeding down the path
22   toward a jury trial, we would withdraw our request for
23   injunctive relief?
24         THE COURT:  I think as a technical matter, under Rule
25   65, if you are consolidating the PI and the trial on the

1  merits, it is not a jury situation because, in essence, you're
2  saying I will treat the PI hearing as if it were trial, and at
3  a PI hearing, you're not going to have a jury.
4          Again, just so everybody understands what the terms of
5  this or consequences and implications of it are, I think, in
6  essence, you're basically saying we're no longer pursuing
7  preliminary injunctive relief given the interim relief that is
8  being agreed upon, and basically we're just proceeding on the
9  trial track.
10         MR. O'BRIEN:  Understood.  I will put that in our
11 letter, your Honor.
12         THE COURT:  Mr. Keyhani.
13         MR. KEYHANI:  Your Honor, our understanding in
14 reaching an agreement and consent in an interim deal is that
15 the preliminary injunction matter is put aside, and we are just
16 going to go to trial on the merits.  That is our understanding
17 of the bargain.
18         THE COURT:  So, by next Friday that should be clear.
19 If there is any disagreement or issue on that score, I will get
20 you guys promptly in here.  If we need to put the preliminary
21 injunction process back on track, we will, but you are not
22 going to have a whole lot of time to submit whatever it is you
23 need to submit and we'll go ahead and schedule the hearing.
24         I am going to assume right now that that is not the
25 direction things will head; but if things fall apart or there

```
                                                                      18
     F2dQcheC

1    is disagreement when you get into the details, then we will be
2    right back here and proceeding more quickly.
3             MR. KEYHANI:  Thank you, your Honor.
4             THE COURT:  Mr. O'Brien, anything else?
5             MR. O'BRIEN:  Not right now, your Honor.  Thank you.
6             THE COURT:  Mr. Keyhani, anything else?
7             MR. KEYHANI:  No.  Thank you, your Honor.
8             THE COURT:  We are adjourned.  Thank you.
9             (Adjourned)
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```