IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

CHEFS DIET ACQUISITION CORP. d/b/a
CHEFS DIET,

        Plaintiff,           CASE NO: 14-CV-8467 (JMF)

    v.

LEAN CHEFS, LLC, NICHOLAS ZAZZA and
ARTHUR GUNNING,

        Defendants.
_____/

**DEFENDANTS' LOCAL RULE 56.1 STATEMENT OF MATERIAL FACTS IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, and Local Civil Rule 56.1, Defendants Lean Chefs, LLC ("Lean Chefs"), Nicholas Zazza ("Zazza"), and Arthur Gunning ("Gunning")(collectively "Defendants") submit this statement of material facts as to which there is no genuine issue to be tried.

    1.    In 2009, a Second Amended and Restated Asset Purchase Agreement ("APA") was executed between Chefs Diet Delivery LLC, Z.C.C.A. Corp., and Kosher Chefs Diet Corp. (collectively "Sellers") and Chefs Diet Acquisition Corp. d/b/a Chefs Diet ("CDAC"). *See* Second Amended and Restated Asset Purchase Agreement, March 18, 2009.

    2.    Under the APA, certain assets, including registered trademarks and customer data were sold to CDAC. *See id.*

    3.    The APA also included a non-compete clause, preventing the Sellers from competing against CDAC in the diet delivery business for three years. *See id.*

    4.    CDAC's sales and profits significantly decreased following acquisition because of poor management decisions, including closing down CDAC's Kosher and California divisions

and reducing CDAC's advertising spending. ███████████████████

███████████████████████████████████████████████████

███████████████████████████████

5. After CDAC purchased Chefs Diet, CDAC asked Zazza's company Zazza Technologies, LLC to manage its phone system. *See* Deposition of Nicholas Zazza 38:25-39:19; 40:2-5; 104:5-105:17 (Jan. 9, 2015); Declaration of Nicholas Zazza, ¶ 6 (February 19, 2016).

6. Prior to executing the Asset Purchase Agreement ("APA"), Glodek convinced Zazza to loan Chefs Diet $218,000. Zazza Decl. at ¶ 3.

7. Zazza was not repaid despite Glodek's promises and reassurances to the contrary. *See* Zazza Decl. at ¶¶ 3-4.

8. ███████████████████████████████████████████████

███████████████████████████████████████████████████

███

9. Zazza believed that if he helped CDAC generate business he might recoup his loan, so he offered to gratuitously assist CDAC with email marketing. Zazza Dep. 40:2-19; Zazza Decl. at ¶ 4.

10. In November 2013, Lean Chefs entered the diet delivery market. Zazza Dep. 120:25-121:6; Zazza Decl. at ¶ 2.

11. Defendants have invested over one million dollars in building the Lean Chefs brand to distinguish it from competitors. *See* Declaration of Arthur Gunning at ¶ 4 (January 23, 2015).

12. CDAC CEO Lance Friedman sent a cease and desist letter to Lean Chefs alleging trademark infringement and trade secret misappropriation. *See* Letter from CDAC to Lean Chefs, Inc. et al. (Dec. 2, 2013).

13. The letter did not identify what Plaintiff believed Defendants had taken from them. *See id.*; Zazza Decl. at ¶¶ 8-9.

14. On December 9th, 16th and 21st, Zazza contacted Friedman to inquire about the letter, but Friedman did not provide Zazza further information. Zazza Decl. at ¶¶ 9-10.

15. Defendants were unaware of any identifiable file allegedly belonging to Plaintiff until discovery in this case. Zazza Decl. at ¶¶ 11-13.

16. CDAC's sales revenues have declined since 2009. Gunning Dep. 95:4-97:8; Maniscalco Dep. 95:4-97:8.

17. CDAC employees have left the company, including former President Misha Podlog, former controller Brenda Utilla, and former sales manager Michael McDonnell. Maniscalco Dep. at 44:7-46:12.

18. Prior to 2012 CDAC did not require its employees to sign any employment or non-disclosure agreements. *See* Deposition of Brenda Utilla, 31:6-23 (Jan. 8, 2015); Deposition of Lance Friedman, 87:11-89:10 (July 22, 2015).

19. CDAC sent its customer list to third parties, including ████████, without any verbal or written confidentiality or non-disclosure agreements. ████████████████████████████████████████████████████████████████ ████████████████████.

20. CDAC did not obtain any verbal or written confidentiality or non-disclosure agreements from Zazza. Zazza Dep. 145:4-17; Utilla Dep. at 56:3-58:5; Zazza Decl. at ¶ 5.

21. CDAC did not inform Zazza of any obligation to maintain the secrecy of its customer list. Zazza Dep. 145:4-17; Zazza Decl. at ¶ 5.

22. ████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████

23. CDAC did not password protect its files when emailing it to third party vendors. *See id.*; Email from Rama Krishna to Deni Davis et al. (Nov. 4, 2010, 12:47 EST).

24. Plaintiff's counsel admitted that it does not have any direct evidence that Defendants hacked into its computer systems. *See* Transcript of Conference, 3:19-4:4 (February 13, 2015).

25. Plaintiff did not disclose the names it allegedly sprinkled its database with until Plaintiff responded to Defendants' interrogatories in November 2014. *See* Pl's Resp. to Def's Interrog. No. 4 (Nov. 21, 2014); Zazza Decl. at. ¶ 13.

26. Defendants were unable to locate the source of data contamination until Plaintiff revealed the sprinkled names Christian Ledan, Peter Daniel, and Joanne Glodek in its responses to Defendants' requests for interrogatories. *See* Zazza Decl. ¶¶ 13-14.

27. Zazza located the names "Christian Ledan" and "Peter Daniel" on a database purchased on or about August 2013 at the Leadcon tradeshow in New York and "Joanne Glodek" was found on a list Chefs Diet sent Zazza on or about February 2010. *See* Zazza Decl. ¶ 15.

28. Upon learning that Defendants' data contained data from the 2010 email, Defendants isolated the data and immediately stopped using it. Zazza Dep. 164:15-168:18; Gunning Dep. 143:7-144:5; Gunning Decl. ¶ 10; Zazza Decl. ¶16.

29. Customer lists containing similar and often duplicative data are readily available from marketing firms such as Epsilon and at industry tradeshows such as Leadcon and Ad Tech. *See* Gunning Dep. 58:11-60:21; 62:14-19; 131:23-132:5.

30. Chefs Diet has acquired its data from these same sources and paid in the range of $1,500-$2,000 for 25,000 leads. Gunning Decl. at ¶ 8.

31. Over half of Lean Chefs' current customers that appear on the CD List also appear on three random and discrete customer lists purchased by Defendants over the course of a year. *See* Declaration of Bruce F. Webster, ¶ 49 (Jan. 12, 2015).

32. In 2010 CDAC sent the 2010 email file to Zazza at his personal email address accessible from a personal computer at his own residence while he had no employment relationship and no agreement or legal obligation in connection with that data. *See* Email from Rama Krishna to Nick Zazza and Misha Podlog (Feb. 24, 2010); Zazza Dep. at 145:14-17; Utilla Dep. at 56:3-58:5.

33. Over 96% of Defendants' customer data that overlapped with Plaintiff's customer data was found in the 2010 email file. *See* Webster Decl. at ¶ 39, 51.

34. Over 98% of Defendants' data that overlapped with Plaintiff's customer data was found in the 2010 email file and lists Defendants purchased from third parties and not from Plaintiff's current data. *See id.* at ¶¶ 4, 22, 23, 47, 48, 50, 51, 52.

35. Contacts on the 2010 email list have been targeted and marketed to for at least the last five years. *See* Gunning Dep. 143:7-144:5.

36. Defendants have not excluded or otherwise deprived CDAC from possession or use of the list. ████████████████████████████████████████

████████████████████

37.Zazza was not an employee or agent of Plaintiff when he gratuitously assisted Plaintiff with email marketing.  *See* Zazza Decl.; Zazza Dep. 38:25-39:14; Utilla Dep. at 56:3-58:5.

38.CDAC did not communicate any confidentiality requirements or duties to Zazza with respect to Plaintiff's allegedly confidential information that would establish a relationship of higher trust.  *See* Zazza Decl. at ¶ 5.

RESPECTFULLY SUBMITTED this 22 day of February 2016.

MEREDITH & KEYHANI, PLLC

By:*/s/ Dariush Keyhani*
DARIUSH KEYHANI

125 Park Avenue, 25th Floor
New York, New York 10017
Direct Dial: (212) 380-1325
Facsimile: (212) 202-3819
dkeyhani@meredithkeyhani.com