IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

CHEFS DIET ACQUISITION CORP. d/b/a
CHEFS DIET,

        Plaintiff,           CASE NO: 14-CV-8467 (JMF)

  v.

LEAN CHEFS, LLC, NICHOLAS ZAZZA
and ARTHUR GUNNING,

        Defendants.
_____/

## DEFENDANTS' REPLY TO PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

    Defendants Lean Chefs, LLC ("Lean Chefs"), Nicholas Zazza ("Zazza") and Arthur Gunning ("Gunning") respectfully submit this Memorandum of Law in reply to Plaintiff Chefs Diet Acquisition Corp. d/b/a Chefs Diet's ("CDAC") opposition to Defendants' motion for summary judgment.

    The arguments made in Plaintiff's opposition are untenable for the following reasons. First, Plaintiff's failure to take any measures to keep its customer information secret is fatal to its trade secret misappropriation and unjust enrichment claims. Prior to 2012, dozens of CDAC employees and contractors were never told that customer data or any other information was confidential or a trade secret, were never asked to sign any agreements relating to confidentiality, and never received or signed any of CDAC or its predecessor companies' purported policy manuals.

    Second, Plaintiff's arguments relating to the Computer Fraud and Abuse Act ("CFAA") fail as a matter of law. Any access Zazza had to CDAC's computer system was authorized by CDAC and thus is not covered by the CFAA. Further, Plaintiff has not met its burden with

respect to its claim Zazza hacked into its system. Plaintiff provides no evidence—forensic of otherwise—of remote access despite claims it monitors IP addresses. Moreover, Plaintiff's claim is belied by its own contention that it is impossible to print, download or email its customer data.

Third, none of Plaintiff's arguments relating to its remaining claims raise material issues of fact. CDAC's assertion that Zazza owed a fiduciary duty to CDAC is not supported by fact. Contrary to CDAC's claim, Zazza was never paid for any marketing or IT services, and any assistance he provided CDAC was gratuitous. There is no evidence that CDAC and Zazza had an agency relationship or any relationship of heightened duties required to support CDAC's claim. In the case of Plaintiff's conversion and replevin claims, no reasonable jury could find that Defendants exercised exclusive control over the customer data or CDAC's demand for the data's return was sufficient. Because Plaintiff fails to raise a triable issue of fact, Defendants' motion for summary judgment should be granted in its entirety.

## I.     ARGUMENT

### A.    Plaintiff presents no evidence to support its claim that its customer data is a trade secret or should be treated as such

Contrary to Plaintiff's argument, Plaintiff has presented no evidence to support finding its claim that CDAC's customer data is a trade secret.[1] "[C]ustomer lists are generally not considered confidential information." *Iron Mountain Information Management, Inc. v. Taddeo*, 455 F.Supp.2d 124, 138 (E.D.N.Y. 2006)(quoting *H. Meer Dental Supply Co. v. Commisso*, 269 A.D.2d 662, 664 (N.Y. App. Div. 2000)). Further, the most important consideration in determining whether information is a protectable trade secret "is whether or not the information

---

[1] Plaintiff's attempt to dismiss the cases cited by Defendants because those cases did not confidentiality obligations and this case does is legal argument not consistent with the facts in this case. Further, contrary to Plaintiff's argument, summary judgment is appropriate where, as here, no reasonable jury could find that Plaintiff possessed a trade secret. *Sci. Components Corp. v. Sirenza Microdevices, Inc.*, No. 03-CV-1851(NGG)(RML), 2006 WL 2524187, at *28 (E.D.N.Y. Aug. 30, 2006); *Atmospherics, Ltd. v. Hansen*, 269 A.D.2d 343, 702 N.Y.S.2d 385 (2000).

is in fact secret." *Derven v. PH Consulting, Inc.,* 427 F.Supp.2d 360, 371 (S.D.N.Y.2006) (citing *Lehman v. Dow Jones & Co., Inc.,* 783 F.2d 285, 298 (2d Cir.1986)).

Plaintiff misrepresents Zazza's testimony. Zazza specifically stated that he did not believe the customer list was confidential to him and he never signed any confidentially agreement with CDAC. *See* Deposition of Nicholas Zazza, 145:4-17 (January 9, 2015)(Q. "It's [customer data] confidential, right? A. "It wasn't confidential to me."; Q. "Why not?" A. "Nobody ever asked me to sign a confidentiality agreement.") (Dkt. # 91, Ex. 4). That CDAC's customer information was not confidential is consistent and supported by testimony of CDAC's former employees and contractors. No reasonable jury could find CDAC maintained its customer data as confidential because dozens of CDAC employees and contractors had access to CDAC's customer data and were not bound to any confidentiality agreements nor told to take any measures to keep this information secret. *See* Declaration of Louis Martinez, ¶¶ 6-9 (April, 21 2016)(**Ex. 1**); Declaration of Amatullah Hadi, ¶¶ 4-5 (April 13, 2016)(**Ex. 2**); Declaration of Michael McDonnell, ¶ 7 (April 14, 2016)(**Ex. 3**).

Plaintiff admits that it did not have any confidentiality agreements with its employees prior to 2012, yet attempts to save this claim by contending that all employees were bound by an apparent ZoneChefs Policy Manual, which former controller and current paid consultant of CDAC, Brenda Utilla, claims she found on her computer. This policy manual, just produced by the Plaintiff in response to Defendants' motion for summary judgment, was not produced during discovery in this case[2] and Plaintiff does not provide any evidence that any employees ever saw or signed it. CDAC employees were never made aware of the alleged manual, were never provided a copy of any manual, and never signed any acknowledgement relating to the manual.

---

[2] Per the Court's April 15, 2013 Civil Case Management Plan and Scheduling Order, fact discovery closed July 24, 2015. *See* Keyhani Decl., 5.

3

*See* Martinez Decl., at ¶ 6; Hadi Decl. at ¶¶ 4-5; McDonnell Decl. at ¶ 7.

Utilla's specific claim that Michael McDonnell[3] signed the acknowledgement in the ZoneChefs Policy Manual while he was an employee of ZoneChef/Chefs Diet is explicitly contradicted by McDonnell's own testimony. McDonnell was never provided any policy manual from CDAC or any of its predecessor companies nor did he sign any acknowledgement forms in connection with any policy manual. McDonnell Decl. at ¶ 7. Not only did McDonnell not receive any policy manual or sign any related acknowledgment, prior to 2012 he was never told the customer information was confidential or a trade secret and was never asked to take any measures to protect the information from disclosure. *Id.* at ¶¶ 4-6. During his time at CDAC and its predecessor companies, McDonnell supervised dozens of sales representatives who also had full access to CDAC's customer data and similarly did not sign or agree to any agreements relating to confidentiality.[4] *Id.* at ¶¶ 2, 5-6, 8. Further, neither McDonnell nor the sales people he oversaw attended any training programs or meetings regarding the purported confidential nature of CDAC's customer data. *Id.* at ¶ 8.

Like its employees, CDAC did not take measures to require its contractors to maintain confidentiality of customer information. Louis Martinez, the owner of Esquire, Ltd., a contractor that provided delivery services for CDAC and its predecessor companies between 2003 and February 2015, was never provided any policy manual and did not sign any agreements relating to the confidential nature of CDAC's customer data. Martinez Decl. at ¶ 1, 2, 6. Martinez had full access to CDAC's customer data through printed daily manifests yet was never informed that the data was a trade secret or confidential and CDAC never asked Martinez to take any steps to

---

[3] It is assumed that Ms. Utilla is discussing Michael McDonnell when she references "Michael McDonald" in her declaration. It is interesting that Ms. Utilla claims to have personal knowledge of "Michael McDonald" signing an acknowledgement relating to the purported ZoneChef Policy Manual, yet cannot correctly spell his name.
[4] McDonnell was also cc'd on the February 24, 2010 email containing CDAC's customer data.

keep the data a secret. *Id.* at ¶¶ 4-5. In addition to Martinez, dozens of Esquire's other drivers delivered meals to between 500 and 3,200 of CDAC and its predecessor companies' customers on any given day. *Id.* at ¶ 3. None of these drivers were provided any policy manual, signed any confidentiality agreements at any time and none of these drivers were told that CDAC's customer data was confidential or a trade secret prior to 2012. *Id*. at ¶¶ 5-6, 8-9.

Even if this Court accepts Plaintiff's claim that there was a policy manual containing a confidentiality and proprietary information agreement that was signed by employees prior to CDAC's acquisition of Chefs Diet in 2009, Plaintiff acknowledges that there are employees that joined CDAC post acquisition and therefore could not be covered by any policy manual or any other agreement relating to confidential information from Zone Chefs or any other predecessor company. Indeed, former CDAC employee Amatullah Hadi, who joined CDAC in 2011, never signed any non-disclosure or confidentiality agreements relating to CDAC's customer information or policy manuals, never attended any meetings or training programs relating to the purported confidential nature of CDAC's customer data, and was never asked to maintain the confidentiality of CDAC's customer data. *See* Hadi Decl. at ¶¶ 2-6. Thus, at no time during her employment with CDAC did Hadi have any obligations relating to the confidentiality of CDAC's data.

Even if CDAC could show that it some of its employees believed the customer data was confidential and took measures to protect it, dozens of employees and contractors with access to the information were wholly unaware of any obligations of secrecy and took no measures that would cause the customer list to become a trade secret. In sum, no reasonable jury could find that CDAC's customer data was secret given the extensive number of employees and contractors with access to CDAC's customer data that were unaware of any confidentiality obligations and

took no measures to protect its secrecy.  Therefore, no reasonable jury could find that CDAC's customer data could qualify as a trade secret.

> B.    **Plaintiff's arguments relating to the Computer Fraud and Abuse Act claim are not supported by law or fact**

Plaintiff's reliance on *Apple Mortgage* is misplaced.[5]  There, this court precluded summary judgment because the defendants continued to receive emails have from the Plaintiff and had access to the Plaintiff's email system after they were terminated.  *Apple Mortgage Corp.,* at *10-11.  Here, CDAC has not and cannot show that Defendants had access to CDAC's system in the years following Zazza's assistance.  To the contrary, Plaintiff argues that "CDAC maintained comprehensive computer security systems to prevent unauthorized access to its Customer List" and that it was impossible "to print, download or email the Customer List."[6]  The only evidence relating to this claim supports the conclusion that Defendants came into possession of the data at though the email Plaintiff sent Zazza and the purchase of lists from third parties.  *See* Email from Rama Krishna to Nick Zazza and Misha Podlog (Feb. 24, 2010)(Dkt. # 91, Ex. 9); Def.'s Resp. to Pl.'s Interrog. No. 10; Declaration of Bruce F. Webster Declaration at ¶¶ 39, 51 (Feb. 19, 2016)(Dkt. # 91, Ex. 15).  Plaintiff's conclusory allegation that Defendants accessed CDAC's computer system remotely cannot survive Defendants' motion for summary

---

[5] The majority of courts in this Circuit have held that if an employer has given an employee access to the computer and to the relevant files, the employee's subsequent misuse of the information or misappropriation with the intent to compete with his employer is not sufficient to violate the CFAA. *Apple Mortgage Corp. v. Barenblatt*, No. 13-CV-9233, 2016 WL 626559, at *10 (S.D.N.Y. Feb. 16, 2016); *Poller v. BioScrip, Inc.*, 974 F. Supp. 2d 204, 232 (S.D.N.Y. 2013)(Furman, J.)("exploitative or disloyal access to an employer's computer will not render otherwise permissible access unauthorized within the CFAA's meaning"); *United States v. Valle*, 807 F.3d 508, 523 (2d Cir. 2015).

[6] Plaintiff's claim that solicitation of fictitious names to the customer list in 2013 could only be accomplished through continued unauthorized access to the Customer List post acquisition is belied by Plaintiff's allegation in another case that a CDAC employee gave its customer list to Lean Chefs in 2014.  *See Hadi v. Chefs Diet Acquisition Corp., et al.*, 15-CV-01230 (KPF), Chefs Diet Acquisition Corp.'s Answer to Second Amended Complaint ¶ 14 (Dkt. # 70).

judgment.[7]

### C. Plaintiff's argument that Zazza and Gunning breached a fiduciary duty is without merit

Plaintiff has not presented any evidence that CDAC and Zazza had a relationship of higher trust and its suggestion that Zazza was an agent of CDAC is untenable. Plaintiff has illustrated its understanding of the limited nature of agency relationships in another case, *Hadi v. Chefs Diet Acquisition Corp., et al*. There, Plaintiff asserted that its former CEO Lance Friedman and purported consultant Kevin Glodek are not agents of CDAC despite their roles as management of the company. *See Hadi v. Chefs Diet Acquisition Corp., et al.*, 15-CV-01230 (KPF), Dkt. # 70, ¶¶ 75-76; Dkt. # 71, ¶ 73; Dkt. #72, ¶ 78 (stating that Glodek and Friedman are not agents of CDAC). Further, Plaintiff's conclusory claim that Gunning aided and abetted Zazza's breach of fiduciary duty is not supported by any facts and is especially untenable considering Gunning was serving time and would therefore have been unable to offer any assistance let alone the required "substantial assistance." *See e.g., In re Refco Inc. Sec. Litig.*, 826 F. Supp. 2d 478, 518 (S.D.N.Y. 2011).

Moreover, CDAC's claim that Zazza was paid for his services is false. *See* Zazza Dep., 36:22-37:2; 103:24-104:6. Zazza was only compensated by CDAC for phone services and analytic call tracking. *See* Zazza Decl. ¶ 4. The alleged record referenced by Utilla regarding payments for website and IT services was a document never produced in discovery and provides no indication or verification that any funds were submitted to Zazza. The document merely states the amount of money CDAC purportedly spent on services. For the alleged years of Zazza's purported website and IT services, no checks or any other documentary evidence of

---

[7] Summary judgment should be granted when the nonmovant's evidence is conclusory, speculative, or not significantly probative. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249-5 (explaining that evidence that is "merely colorable" is insufficient to oppose a motion for summary judgment); *Allison v. Clos-ette Too, LLC*, No. 14-CV-1618 LAK, 2015 WL 5333930, at *4 (S.D.N.Y. Sept. 14, 2015).

payment to Zazza or Zazza's companies has ever been produced and nor can it because none exists. Self-serving internal notes of CDAC's management documenting their various expenses not prove that CDAC paid Zazza.

**D.     Plaintiff's conversion and replevin arguments lack merit**

CDAC seems to argue that it was prevented from soliciting customers appearing on its customer list because Defendant was also marketing to those customers. Plaintiff's argument defies logic and its reliance on *In re Cross Media Marketing* is misplaced. *In re Cross Media Marketing* involved a defendant who auctioned off Plaintiff's customer list and refused to return it, thus hindering the plaintiff's ability to sell its list. *In re Cross Media Mktg. Corp.*, No. 06 CIV. 4228 (MBM), 2006 WL 2337177, at *6 (S.D.N.Y. Aug. 11, 2006). Here, CDAC confuses its alleged ownership of customer information with ownership of the customers themselves. CDAC maintained possession of its customer data at all times and was never prevented from marketing to those contacts. Evidence that customers chose Lean Chef's product over Chefs Diet does not suggest that Defendant "interfered" or "derogated" CDAC's purported right to solicit customers. Moreover, unlike *In re Cross Media*, upon learning that Defendants' data contained data from the 2010 email file, Defendants isolated the data and stopped using it. *See* Deposition of Arthur Gunning 143:7-144:5 (Jan. 7, 2015)(Dkt. # 91, Ex. 3); Declaration of Arthur Gunning, ¶ 10 (Jan. 23, 2015)(Dkt. # 91, Ex. 5).

Plaintiff's argument that its demand was sufficient is also flawed. Plaintiff's assertion that it is undisputed that Zazza knew he had possession of the customer list when he received Plaintiff's cease and desist letter is simply not true. The cease and desist letter sent by Plaintiff merely stated that Lean Chefs had been in contact with CDAC customers "through unauthorized misuse of its proprietary customer list…" *See* Declaration of Nicholas Zazza, ¶¶ 8-9 (Feb. 12,

2016)(Dkt. # 91, Ex. 1). Friedman did not follow up or provide any additional information relating to CDAC's demand when asked by Zazza, so Zazza remained unaware of his possession of the data until discovery in this case. *Id.* ¶¶ 9-11. Accordingly, no reasonable jury could find for Plaintiff on either its conversion or replevin claims.

### E.     Plaintiff provides no evidence to support its unjust enrichment claim

CDAC's unjust enrichment claim lacks support. First, CDAC's customer information had no intrinsic value as it was readily available in the marketplace. CDAC did not protect its customer list from disclosure and several of CDAC's employees and contractors had access to CDAC's purported confidential information despite never being told to keep it confidential nor signing any agreement to that effect. *See* Martinez Decl., ¶¶ 6-9; Hadi Decl. at ¶¶ 4-5; McDonnell Decl. at ¶ 7. Defendants were no more enriched than anyone else in the general public, as CDAC's customer information had infiltrated the customer data marketplace through no fault of Defendants.

Second, Plaintiff provides no support for its assertion that Zazza knew he downloaded the customer data into his database. Defendants were unaware of any identifiable file allegedly belonging to Plaintiff until Plaintiff provided the names it added to the database during discovery in this case and Zazza was able to locate the source of contamination. Zazza Decl. at ¶¶ 13-15. Thus, it is against equity and good conscience to allow Plaintiff to recover when it made no effort to prevent damages from accruing.

### F.     No reasonable jury could conclude find for Plaintiff on its breach of contract claim or trademark infringement claims

Plaintiff's arguments relating to its breach of contract claim are not supported by fact or law. Plaintiff's breach of contract claim cannot survive because the APA only applies to property sold under the APA and cannot be understood to apply to CDAC's future data not

9

contemplated under the APA. Even if customers that appear in data transferred to Plaintiff pursuant to the APA also appears in the data given to Zazza without restrictions a year later, Plaintiff has not identified any provision of the APA allegedly breached by Defendants and has not provided any law that supports its claim that Defendants had no right to solicit customers appearing in data transferred after the APA was executed. Further, Plaintiff presents no evidence that would allow a jury to find an implied agreement between Zazza and CDAC.

In the case of Plaintiff's trademark infringement claims, Chefs Diet is a weak mark that is generic or descriptive and is not likely to be confused with Defendants' Lean Chefs mark. Indeed, the purported customer service evidence presented by Plaintiff suggests that there is no confusion between the marks. Indeed, in the calls received by Plaintiff, the customers distinctly recognize that Lean Chefs is something different from Chefs Diet. Moreover, Plaintiff's argument that Defendants adopted the Lean Chefs mark in bad faith is without merit as Plaintiff presents no evidence to rebut Defendants' evidence of good faith in adopting the Lean Chefs mark. Further, Plaintiff's arguments regarding the customer list have no relationship to Defendants' alleged bad faith in adopting the Lean Chefs trademark.

## II. CONCLUSION

Based on the foregoing, Defendants' motion for summary judgment should be granted in its entirety.

RESPECTFULLY SUBMITTED this 21st day of April, 2016.

                                              MEREDITH & KEYHANI, PLLC

                                              By: */s/ Darius Keyhani*___
                                                    Darius Keyhani
                                                     125 Park Ave, 25th Floor
                                                     New York, New York 10017
                                                     Direct Dial: (212) 380-1325
                                                     Facsimile: (212) 202-3819
                                                     dkeyhani@meredithkeyhani.com